# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

***

SECURITIES & EXCHANGE COMMISSION,

                Plaintiff,

vs.

BANC DE BINARY, *et al.*,

                Defendants.

2:13–cv–993–RCJ–VCF

**ORDER**

       This matter involves the Security and Exchange Commission's civil enforcement action against Banc de Binary, *et al.* for allegedly trading unregistered securities in violation of Section 5 of the Securities Act, 15 U.S.C. §§ 77e and section 15(a)(1) of the Exchange Act of 1934, 15 U.S.C. § 78o(a)(1). (Second Amend. Compl. (#58) at ¶¶ 120–27[1]). Before the court is the Commission's motion to compel, which requests an order requiring Cypriot, Israeli, and Seychellois Defendants to appear for depositions in Washington, D.C. (#52). In response, Banc de Binary requests a protective order that locates the depositions at Banc de Binary's principal place of business in Cyprus. (#46).

## BACKGROUND[2]

       Because the parties' motions require the court to select the venue for a series of depositions, the relevant facts include an overview of (1) Banc de Binary's affiliates and business activities and (2) the discovery dispute before the court. Both are discussed below.

---

[1] Parenthetical citations refer to the court's docket.

[2] The facts below are stated for background purposes and do not constitute binding findings of fact beyond the scope of this order. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.").

## I.    Banc de Binary & Binary Options

Defendant Banc de Binary is a Cypriot corporation with a principal place of business on Cyprus' southern shore, in Limassol. (Summons (#58-1) at 1). It is affiliated with three other corporations, Defendants ET Binary Options Ltd., BO Systems, Ltd., and BDB Services, Ltd. (Second. Amend. Compl. (#58) at ¶¶ 4). Although Banc de Binary's affiliates are incorporated in Israel and the Republic of Seychelles, the companies collectively do business as "Banc de Binary." (*Id*. at ¶¶ 4, 13–15).

Banc de Binary was founded in 2010 by Defendant Oren Shabat Laurent, a twenty-nine year old American and Israeli citizen who lives on the outskirts of Tel Aviv. (*Id*. at ¶ 16); (Pl.'s Serv. Mot. (#43-1) at 3:10–11). He owns fifty percent of Banc de Binary, and is also the sole owner or fifty percent shareholder of ET Binary Options Ltd., BO Systems, Ltd., and BDB Services, Ltd. (Second. Amend. Compl. (#58) at ¶¶ 5, 18, 19, 31).

Banc de Binary operates an online trading platform where investors buy securities[3] known as "binary options." (*See id*. at ¶¶ 33–43). Binary options are essentially fixed odds financial bets. *See* ABE COFNAS, TRADING BINARY OPTIONS 3 (2012) (comparing binary options to fix odds bets). When purchasing binary options, investors guess whether the value of a stock will increase or decrease. (Second. Amend. Compl. (#58) at ¶¶ 33–43). If the guess is correct, the investor receives a payout that is determined by the value of the underlying asset. (*Id*.) If the guess is incorrect, the investor gets nothing. (*Id*.) They are called binary options because these two returns are the only possible returns. (*See id*.)

Although Banc de Binary is licensed to operate in Cyprus under the supervision of the Cyprus Securities and Exchange Commission, it is not registered with the United States' Securities and

---

[3] As discussed in the Honorable Robert C. Jones, U.S. District Judge's August 7, 2013 order, binary options are not technically options but they are securities subject to the Commission's jurisdiction. *Sec. Exch. Comm'n v. Banc de Binary, et al.*, — F. Supp. 2d —, 2013 WL 4042280, at *6 (D. Nev., Aug. 7, 2013).

Exchange Commission and, therefore, not licensed to operate here. (*Id*. at ¶¶ 56, 79). Nonetheless, Banc de Binary has allegedly traded binary options in the United States since 2010 in violation of section 5 of the Securities Act, 15 U.S.C. §§ 77e and section 15(a)(1) of the Exchange Act of 1934, 15 U.S.C. § 78o(a)(1). (*Id*. at ¶¶ 120–27).

The Commission alleges that Banc de Binary had[4] "extensive business" contacts in the United States. In 2012, fifty to sixty percent of its 250,000 investors were American. (*Id*. at ¶ 44). Other significant contacts included (1) representing itself as "headquartered in New York," (2) maintaining a "virtual" address on Wall Street, (3) advertising itself as having a "North American Brokerage Department" with offices at 40 Wall Street, Floor 28, New York, NY 10005, and (4) stating on its website that "[o]ur entire staff is located in the United States. We never outsource abroad and your information is secured in our US based server facilities." (*Id*.); (Pl.'s Mot. to Compel (#44-1) at 4:6–11). Additionally, one of Banc de Binary's brokers allegedly told investors that he lived within "walking distance of Wall Street."[5] (*Id*.)

## II.    The Discovery Dispute: Picking a Deposition Location

The parties are currently in the midst of discovery. They cannot, however, agree on a location for the depositions of Banc de Binary and three of its officers and directors: Mr. Laurent, Uri Katz, and Yehezkel Shabat. (*Id*. at 4:22); (Pl.'s Notice of Mot. (#44) at 1:24–25).[6] Several locations were considered: Cyprus and Israel, where Defendants reside, Washington, D.C., where the Commission is headquartered and Defense Counsel resides, Nevada, where this action is pending and additional

---

[4] Banc de Binary has ceased soliciting new American customers and has frozen the accounts of its existing American customers. *Banc de Binary*, — F. Supp. 2d —, 2013 WL 4042280, at *7.

[5] After reviewing these facts, Judge Jones concluded that Banc de Binary "solicits customers within the United States" and preliminarily enjoined Banc de Binary from further solicitation in the United States. *Banc de Binary*, — F. Supp. 2d —, 2013 WL 4042280, at *1.

[6] Mr. Katz is apparently no longer associated with Banc de Binary. (*See* Def.'s Opp'n (#45) at 6:20).

3

Defense Counsel resides, and even Los Angeles, where the Commission's attorneys reside. (*Id.*)

The distances between these locations are considerable. 6,999 miles, and ten time zones, separate Reno, Nevada, where the Honorable Robert C. Jones, U.S. District Judge sits, and Cyprus, which is Banc de Binary's principal place of business. Approximately 2,595 miles, and three time zones, separate Reno and Washington, D.C. And, approximately 5,663 miles, and seven time zones, separate Washington, D.C. and Cyprus.

Further complicating matters, Banc de Binary and Mr. Laurent refuse to appear for depositions anywhere in the United States. (*Id.* at 5:20). In addition to the expense involved with traveling to the United States, Mr. Laurent is concerned that Judge Jones' August 7, 2013 order noted that Defendants may be criminally liable under the federal RICO statute. *See Banc de Binary*, — F. Supp. 2d —, 2013 WL 4042280, at *n. 4.

Because the Commission could not resolve the matter during its various meet and confers with Banc de Binary, it filed the instant motion to compel on January 24, 2014. The Commission argues that the depositions should take place in Washington, D.C., as stated in the deposition notices. In response, Banc de Binary moved for a protective order, and requests that the depositions be noticed for Cyprus at Banc de Binary's principal place of business or Israel, where Mr. Laurent resides.

**DISCUSSION**

The parties' filings raise one question: whether the deposition of an overseas, corporate defendant should occur at the defendant's principal place of business or at the location noticed by the examining party. Before addressing this question, the court begins its analysis by reviewing the law governing the location of depositions involving defendants who live abroad.

4

## I.   Overseas Deponents & the Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 30 governs depositions. Rule 30(b)(1) provides, "[a] party who wants to depose a person by oral questions . . . must state the time and place of the deposition." FED. R. CIV. P. 30(b)(1). Generally, this means that the examining party may unilaterally choose a deposition's location. CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2112 at 523 (3d ed. 2010); *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 628 (C.D. Cal. 2005).

However, the examining party's discretion to choose a location is limited. First, Rule 26(c) empowers courts to shield deponents "from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c). This rule grants district courts "wide discretion" to establish a deposition's location. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994) (citing *In re Standard Metals Corp.*, 817 F.2d 625, 628 (10th Cir. 1987)).

Second, there is a rebuttable presumption that a corporation's deposition should be taken at the corporation's principal place of business.[7] WRIGHT & MILLER, *supra*, at § 2112 at 533; *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 483 (10th Cir. 1995); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *Cadent*, 232 F.R.D. at 628. When a foreign defendant is involved, this presumption may be even stronger. *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987); *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 471 (E.D. Va. 2010). But, this rule is not—(and never was)—"invariable." *Hirsch v. Glidden Co.*, 79 F. Supp. 729, 730 (S.D.N.Y. 1948) (permitting a deposition near the defendant's satellite office if the examining party pays the deponent's traveling expenses and hotel bill); *Gitto v. "Italia", Societa Anonima Di Navigazione, Genova*, 28 F.

---

[7] There is also a general presumption that natural-person defendants should be deposed in the district of his or her residence. *Fausto v. Credigy Serv. Corp.*, 251 F.R.D. 427, 429 (N.D. Cal. 2008) (citation omitted).

Supp. 309, 310 (E.D.N.Y. 1939) (modifying the general rule to avoid undue expense).

The Federal Rules of Civil Procedure are otherwise silent with regard to choosing a deposition's location. *Outsidewall*, 267 F.R.D. at 471. Where, as here, there is no place that appears convenient for the parties, the task of deciding the proper location falls on the court. *Id.*; *Societe Nationale*, 482 U.S. at 546 ("We do not articulate specific rules to guide this delicate task of adjudication."). In developing this standard, courts consider whether "circumstances exist distinguishing the case from the ordinary run of civil cases." *Outsidewall*, 267 F.R.D. at 471 (citing *Salter*, 593 F.2d at 651–52); *Hyde &* Drath, 24 F.3d at 1166.

When making this determination courts in the Ninth Circuit[8] apply a five-factor test (the *Cadent* factors): (1) the location of counsel for the parties in the forum district; (2) the number of corporate representatives a party is seeking to depose; (3) the likelihood of significant discovery disputes arising which would necessitate-resolution by the forum court; (4) whether the persons sought to be deposed often engage in travel for business purposes; and (5) the equities with regard to the nature of the claim and the parties' relationship. *Cadent*, 232 F.R.D. at 629.

This, however, is not the only test. When considering where to locate the deposition of a defendant residing overseas, courts have also considered its ability to supervise depositions and resolve discovery disputes. *Afram Exp. Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1365 (7th Cir. 1985); *Mill-Run Tours v. Khashoggi*, 124 F.R.D. 547, 551 (S.D.N.Y. 1989). Other considerations include

---

[8] These factors are applied in several circuits. *See, e.g.*, *Armsey v. Medshares Mgmt. Servs.*, 184 F.R.D. 569, 571 (W.D. Va. 1998); *Resolution Trust Corp. v. Worldwide Ins. Mgmt. Corp.*, 147 F.R.D. 125, 127 (N.D. Tex. 1992)); *Smith v. Shoe Show of Rocky Mount, Inc.*, No. 00-30141-MAP, 2001 WL 1757184, at *3 (D. Mass. Apr. 26, 2001). Additionally, courts in the Ninth Circuit have applied these factors in cases involving defendants who reside in foreign domestic jurisdictions, *see, e.g.*, *Botell v. United States*, No. 2:11–cv–1545–GEB, 2013 WL 360410, at *3 (E.D. Cal. Jan. 29, 2013) (American Samoa), and international jurisdictions, *see, e.g., In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C-07-05634 CRB (DMR), 2013 WL 6730165, at *2 (N.D. Cal. Dec. 20, 2013) (China).

whether the deposition would be impeded by the foreign nation's laws or would affront the nation's judicial sovereignty. *Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333, 336 (N.D. Ind. 2000). ("If a federal court compels discovery on foreign soil, foreign judicial sovereignty may be infringed, but when depositions of foreign nationals are taken on American or neutral soil, courts have concluded that comity concerns are not implicated."); *Fin. Gen. Bankshares, Inc. v. Lance*, 80 F.R.D. 22, 23 (D. D.C. 1978); *McKesson Corp. v. Islamic Rep. of Iran*, 185 F.R.D. 70, 80 (D.D.C. 1999).

Rule 28(b) must also be considered. Rule 28(b) governs depositions in foreign countries and prescribes four methods for taking depositions abroad. *See* Fed. R. Civ. P. 28(b) (permitting depositions in a foreign country (a) under a treaty or convention, (b) under letters rogatory, (c) on notice, or (d) before a person commissioned by the court). Where, as here, a party moves for a protective order, which locates a deposition abroad, the moving party must show that the protection requested complies with Rule 28(b). *Societe Nationale*, 482 U.S. at 533; *see also Fausto*, 251 F.R.D. at 430–31 (ordering four Brazilian defendants to be deposed in the United States because "it apparently is illegal for American lawyers to take depositions in Brazil.").

Finally, the court must consider Rule 1, which instructs the court to construe and administer the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Courts routinely apply Rule 1 when determining where to locate a deposition. *See, e.g.*, *Cadent*, 232 F.R.D. at 630 (applying Rule 1); *see also Societe Nationale*, 482 U.S. at 546 ("American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position.").

In sum, the governing law requires the court to make three distinct inquiries: (1) whether the parties claims and contacts with the forum warrant locating the deposition at home or abroad;

7

(2) whether a foreign deposition will offend or infringe that nation's judicial sovereignty; and (3) whether less expensive and more reasonable alternatives exist.

## II.   The Court's Binary Option: Cyprus or Washington, D.C.?

The parties' motions present the court with a binary option: it may either set the deposition in Cyprus, which is Banc de Binary's principal place of business, or Washington, D.C., where the Commission noticed the depositions. The court finds that the *Cadent* factors favor locating the deposition in Washington, D.C. This conclusion is bolstered by the fact that Banc de Binary failed to show that holding the depositions abroad would satisfy Rule 28(b)(1). However, because deposing Banc de Binary in Washington, D.C. will be costly for both parties, the court gives the parties their own binary option: incur the costs associated with deposing Banc de Binary in Washington, D.C. or stipulate to a less expensive procedure as afforded by the Federal Rules of Civil Procedure.

The court's decision is discussed in more detail below. It proceeds in three parts: (1) an examination of the *Cadent* factors; (2) an discussion of additional factors that influenced the court's decision; and (3) a discussion of Rule 1 and less expensive alternatives to in-person, oral depositions.

### A.   *The* Cadent *Factors Support Locating the Depositions in Washington, D.C.*

Under *Cadent*, the court must examine: (1) the location of counsel for the parties in the forum district; (2) the number of corporate representatives a party is seeking to depose; (3) the likelihood of significant discovery disputes arising which would necessitate-resolution by the forum court; (4) whether the persons sought to be deposed often engage in travel for business purposes; and (5) the equities with regard to the nature of the claim and the parties' relationship. *Cadent*, 232 F.R.D. at 629. These factors favor holding the depositions in Washington, D.C.

First, the court considers "the location of counsel for the parties in the forum district." *Cadent*, 232 F.R.D. at 629, 630 (citing *Resolution Trust Corp. v. Worldwide Ins. Mgmt. Corp.*, 147 F.R.D. 125,

127 (N.D. Tex. 1992); *Turner v. Prudential Ins. Co. of Am.*, 119 F.R.D. 381, 382 (M.D. N.C. 1988)).

Here, this factor is unhelpful. The Commission's counsel resides in Los Angeles and Defense Counsel

resides in Washington, D.C. and Reno, Nevada. However, Defense Counsel argued that the depositions

should occur abroad because "no counsel in this case are located in the forum district. (Def.'s Opp'n

(#45) at 9:12–15). This statement is false.[9] Therefore, the court construes this factor against Banc de

Binary. *See also* Fed. R. Civ. P. 11 (permitting the imposition of sanctions for misleading the court).

Second, the court considers "the number of corporate representatives a party is seeking to

depose." *Cadent*, 232 F.R.D. at 629. Here, this factor is of limited utility. The Commission noticed Rule

30(b)(1) depositions for Mr. Laurent, Mr. Katz, and Mr. Shabat and a Rule 30(b)(6) deposition for Banc

de Binary. Although the Commission contends that the number of corporate representative will be

limited because Mr. Laurent, Mr. Katz, and Mr. Shabat are (or were[10]) leading candidates for Banc de

Binary's Rule 30(b)(6) deposition, the Commission does not decide who appears for Banc de Binary's

30(b)(6) deposition or how many deponents must appear. *See* Fed. R. Civ. P. 30(b)(6) ("The named

organization must [] designate one or more officers . . . who consent to testify on its behalf."); *see also*

*Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008) (citing *In*

---

[9] The docket reflects that Banc de Binary retained Snell & Wilmer, LLP in Reno. Snell & Wilmer's Reno offices are located at 50 W. Liberty Street. This address is directly across S. Virginia Street from the Bruce R. Thompson Courthouse and Federal Building in Reno. In fact, given the location of the courthouse's front door and the crosswalk at the intersection of S. Virginia Street and W. Liberty Street, the address that Snell & Wilmer occupies in Reno is the closest possible building to the federal courthouse in Reno. To date, Snell & Wilmer has not filed a motion to withdraw as counsel of record.
       This misrepresentation is particularly troubling in light of Judge Jones' unequivocal March 3, 2014 order (#57), which emphasized *pro hac vice* counsel's duty to abide by this District's ethical rules and abstain from filing frivolous motions and making meritless arguments. (*See generally id.*) (citing *Equal Emp't Opportunity Comm'n v. Wells Fargo Bank, N.A.*, No. 3:13–cv–528, 2014 WL 258560, at *2 (D. Nev. Jan. 23, 2014) (Jones, J.)). Banc de Binary's *pro hac vice* counsel, which drafted the instant opposition, should take note of Judge Jones' orders regarding ethics.
[10] Because Mr. Katz is no longer associated with Banc de Binary, (*see* Def.'s Opp'n (#45) at 6:20), he is no longer subject to being deposed under Rule 30(b)(6) unless he consents. *See* Fed. R. Civ. P. 30(b)(6) ("The named organization must then designate one or more officers, directors, or managing agents, or designate **other persons who consent** to testify on its behalf.") (emphasis added).

*re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 172 (D. D.C. 2003) (corporation is obligated to produce one or more Rule 30(b)(6) witnesses who are thoroughly educated about the noticed deposition topics and facts known to the corporation or its counsel)). Because Banc de Binary has not yet identified who will appear on its behalf, and because Mr. Katz's departure from the corporation may require multiple people to fill his shoes, the court cannot accurately determine "the number of corporate representatives a party is seeking to depose." *Cadent*, 232 F.R.D. at 629.

Third, the court considers "the likelihood of significant discovery disputes arising which would necessitate-resolution by the forum court." *Cadent*, 232 F.R.D. at 629. This factor also militates in favor of locating the depositions in Washington, D.C. Relying on *In re Outsidewall Tire Litigation*, Banc de Binary argues that this factor does not—as *Cadent's* plain language of suggests—focus on the likelihood of discovery disputes; rather, it asserts that the relevant inquiry is whether the discovery disputes will be the result of good faith objections or obstructionist behavior.[11] (Def.'s Opp'n (#45) at 11) (citing *Outsidewall*, 267 F.R.D. at 473–74).

The court disagrees. As discussed above, courts in the Ninth Circuit generally follow *Cadent*; and *Cadent* does not contain the distinction that Banc de Binary and *Outsidewall* make. *See generally Cadent*, 232 F.R.D. at 629. Even if it did, however, the court would respectfully disagree with *Outsidewall's* distinction between "good faith" and "obstructionist" objections. *Outsidewall* states the likelihood of good faith objections militate in favor of holding depositions abroad and the likelihood of bad faith objections militate in favor of holding depositions at home. *See Outsidewall*, 267 F.R.D. at 474 ("This type of conduct [i.e., a history of bad faith discovery disputes] warrants the forecast that disputes will arise in the course of the depositions that will likely require judicial intervention."). Presumably,

---

[11] The court notes that Banc de Binary did not argue that the case law interpreting of this factor demonstrates that this distinction was intended by its drafters.

this distinction is predicated on the fact that the rules were designed to be self-executing and the assumption that attorneys operating in good faith will be self-policing and not require judicial intervention. *See* FED. R. CIV. P. 30(c)(1) (stating that depositions should "proceed as they would at trial"); *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 185 (E.D. Pa. 2008) (stating that Rule 30 is self-executing).

However, courts must decide all discovery disputes, whether they are brought in good faith or bad faith. In fact, even the likelihood of good faith disputes—like those involving a civil litigant's invocation of the Fifth Amendment—militate in favor of holding depositions at home. A criminal defendant's privilege against self-incrimination represents one of the most important civil liberties conferred by the Bill of Rights, and its use in the civil setting may have costly effects. *See, e.g.*, *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 909 (9th Cir. 2008) (discussing use of the Fifth Amendment privilege in the civil context). A civil litigant faced with the prospect of criminal prosecution should not be burdened by uncertainty or delay[12] when waiting for a judge in a civil matter to resolve the propriety of a good faith objection that may affect the litigant's criminal case. *See* FED. R. CIV. P. 1.

Both parties agree that criminal prosecution is a possibility. As discussed above, Judge Jones' August 7, 2013 order recognized that Defendants may be criminally liable under the federal RICO statute. *See Banc de Binary*, — F. Supp. 2d —, 2013 WL 4042280, at *n. 4. Whether indicted or not, Mr. Laurent has the right to invoke his Fifth Amendment right against self-incrimination. *See, e.g.*, *Malloy v. Hogan*, 378 U.S. at 11 ("The privilege afforded not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in

---

[12] In this case, the delay would be considerable. Ten time zones separate Nevada, where the action is pending, and Cyprus, which is Banc de Binary's principal place of business. This distance precludes the possibility of the court resolve objections by phone as is the ordinary practice in this district.

11

the chain of evidence needed to prosecute"). Accordingly, this factor militates in favor of holding the depositions in the United States.

Fourth, the court considers "whether the persons sought to be deposed often engage in travel for business purposes." *Cadent*, 232 F.R.D. at 629. As an initial matter, the court notes that this factor cannot mean what it says. Whether a deponent regularly engages in general travel for business purposes is presumably irrelevant, unless the deponent's travel regularly includes the proposed situs of the deposition. The court's review of the case law that established this factor demonstrates that this is the case.[13]

When *Cadent* applied what is now known as the fourth *Cadent* factor, it relied on *Turner*, 119 F.R.D. at 382. *See Cadent*, 232 F.R.D. at 630 (citing *Turner*, 119 F.R.D. at 382). In *Turner*, the court did not merely consider "whether the persons sought to be deposed often engage in travel for business purposes." Rather, it examined whether the defendant reached into the forum where the deposition was noticed to occur to the sell insurance policies underlying the action. *Turner*, 119 F.R.D. at 384. In part, because the defendant traveled to the deposition's forum to solicit customers, the court concluded that the defendant should be deposed in that forum. *Id.*

Similar facts exist here. Banc de Binary solicited customers in the United States. In fact, the Commission alleges that in 2012, fifty to sixty percent of Banc de Binary's 250,000 investors were American. (Second Amend. Compl. (#58) at ¶ 44). Banc de Binary's opposition does not dispute this fact. (*See generally* Def.'s Opp'n (#45) at 13–15). Rather, Banc de Binary argues that it should be deposed in Cyprus because it "is a small company, with approximately 60 employees, none of who work or reside in the United States." (*Id.* at 14:18–19). This argument is unavailing. Size does not matter.

---

[13] Although the Commission did not cite *Turner* when discussing the fourth factor, it properly construed this factor as whether the defendant "has operated extensively in the U.S." (*See* Pl.'s Mot. to Compel (#44-1) at 9:9).

When considering this factor the dispositive question is whether the foreign defendant reached into the forum to conduct business. *Turner*, 119 F.R.D. at 384. If so, it may—as here—be compelled to appear in that forum for a deposition because "[d]efending lawsuits in [the] forum" is "one of the expected costs of doing business" in the forum. *Id*. (citing *Rossman v. State Farm Mut. Auto. Ins. Co*., 832 F.2d 282, 286–87 (4th Cir. 1987)).

Fifth, the court also considers "the equities with regard to the nature of the claim and the parties' relationship." *Cadent*, 232 F.R.D. at 629. This factor compels locating the deposition in Washington, D.C. Estoppel is an equitable principle that precludes a party from asserting something contrary to a previous assertion. *See* BLACK'S LAW DICTIONARY (9th ed. 2009), equitable estoppel. The principle applies here. According to the Commission's complaint, Banc de Binary advertised itself as a corporation based in the United States. (*See* Second. Amend. Compl. (#58) at ¶¶ 120–27). In reality, the Banc de Binary affiliates are incorporated in Cyprus, Israel, and the Seychelles. (*Id*. at ¶¶ 4, 13–15). Permitting Banc de Binary to now benefit from its status as a foreign corporation after it has exploited its appearance as an American company would be fundamentally inequitable.

Both parties argue that this factor weights in their favor because of the traveling expenses that will be incurred. (*Compare* Pl.'s Mot. to Compel (#44-1) at 10:4–9 *with* Def.'s Opp'n (#45) at 16:11–12). Hardship, burden, and undue expense are equitable principles that the court may take into consideration when setting the location of a deposition. *See* FED. R. CIV. P. 26(c); *Societe Nationale*, 482 U.S. at 546. However, the plain language of *Cadent* indicates that these considerations are irrelevant under the fifth factor. The fifth factor predicates the court's consideration of equities on "the nature of the claim" and "the parties' relationship." *See Cadent*, 232 F.R.D. at 629. Here, the nature of the Commission's claim concerns Banc de Binary's unregistered solicitation of American investors. (Second Amend. Compl. (#58) at ¶¶ 124–27).

13

**B.**     *Additional Considerations Support Locating the Depositions in Washington, D.C.*

Having decided that the *Cadent* factors militate in favor of deposing Banc de Binary in Washington, D.C., the court notes three additional considerations that support its decision.  First, Banc de Binary failed to satisfy its burden. Rule 26(c) governs protective orders. It provides that the court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including . . . [f]orbidding the disclosure of discovery. FED. R. CIV. P. 26(c)(1)(A). The party resisting discovery bears the burden of persuasion. *U.S. Equal Emp't Opportunity Comm'n v. Caesars Entm't, Inc*., 237 F.R.D. 428, 432 (D. Nev. 2006) (citing *Cipollone v. Liggett Group, Inc*., 785 F.2d 1108, 1121 (3rd Cir. 1986)).

Where, as here, a party moves for a protective order, which locates a deposition abroad, Rule 26(c)'s good cause showing requires showing that the foreign deposition will comply with Rule 28(b). *See Societe Nationale*, 482 U.S. at 533–547 & n. 13. Under Rule 28(b)(1), a deposition may be taken in a foreign country "(A) under an applicable treaty or convention; (B) under a letter of request, whether or not captioned a "letter rogatory"; (C) on notice, before a person authorized to administer oaths either by federal law or by the law in the place of examination; or (D) before a person commissioned by the court to administer any necessary oath and take testimony." FED. R. CIV. P. 28(b)(1). Compliance with Rule 28(b) is essential because noncompliance may subject counsel to criminal prosecution, *see Fausto*, 251 F.R.D. at 430–31, or offend the foreign nation's judicial sovereignty, *Custom Form Mfg.*, 196 F.R.D. at 336.

Here, Banc de Binary argues that the Commission's Rule 30(b)(1) and Rule 30(b)(6) depositions should be held in Cyprus, which is Banc de Binary's principal place of business, or Israel, which is Mr. Laurent's county for residence. (*See* Def.'s Opp'n (#45) at 5:17). However, Banc de Binary failed to address whether the depositions may proceed in Cyprus or Israel under Rule 28(b)(1). (*See generally id.*)

Accordingly, the court cannot conclude—as Banc de Binary requests—that good cause exists to locate the depositions abroad.

Second, Mr. Laurent—who is either the sole or fifty percent shareholder of each Banc de Binary affiliate—is an American citizen. (Second. Amend. Compl. (#58) at ¶¶ 5, 18, 19, 31). Citizenship includes responsibilities. Among them is the responsibility to participate in the judicial process by serving on a jury. Although this duty is often excused when traveling abroad, it is well established that other responsibilities endure beyond the nation's boarder. The duty to pay taxes endures. *Cook v. Tait*, 265 U.S. 47 (1924). To duty to obey criminal laws endures. *U.S. v. Bowman*, 260 U.S. 94 (1922). And, if required, the obligation to return home and testify at a deposition also endures. 28 U.S.C. § 1783;[14] *Blackmer v. U.S.*, 284 U.S. 421, 438 (1932) ("The jurisdiction of the United States over its absent citizen . . . is a jurisdiction *in personam*, as he [or she] is personally bound to take notice of the laws that are applicable to him and to obey them.").

As discussed above, there is generally a strong presumption that foreign defendants should be deposed at their principal place of business or near their residence. *See Societe Nationale*, 482 U.S. at 546 ("American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position."); *Outsidewall*, 267 F.R.D. at 471. However, Mr. Laurent is not a typical foreign defendant. He is an American citizen who, by virtue of his citizenship, retains certain

---

[14] Under the Walsh Act,

> [a] court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it . . . of a national or resident of the United States who is in a foreign country . . . if the court finds that particular testimony . . . is necessary in the interest of justice, and . . . that it is not possible to obtain his testimony in admissible form without his personal appearance . . . .

28 U.S.C. § 1783(a); *see also Estate of Ungar v. Palestinian Auth.*, 412 F. Supp. 2d 328, 332 (S.D.N.Y. 2006) (explaining the Walsh Act).

15

responsibilities to the country while abroad. It would be fundamentally inequitable to allow Mr. Laurent to have enjoyed the benefits of his citizenship as he operated his businesses at home, and then excuse him of any associated responsibilities because he happens to live abroad.

Third, "there are numerous cases in which courts have ordered depositions of foreign defendants taken in the United States, rather than at the defendant's principal place of business." *In re Vitamin Antitrust Litig.*, No. 99–cv–197–TFH, 2001 WL 35814436, at *3 (D.D.C. Sept. 11, 2001) (citing *McKesson Corp.*, 185 F .R.D. at 70; *Fin. Gen. Bankshares*, 80 F.R.D. at 23; *Custom Form*, 196 F.R.D. at 336–37)); *New Medium Technologies LLC v. Barco N.V.*, 242 F.R.D. 460 (N.D. Ill. 2007) (requiring corporate deponent to travel from Japan to Chicago); *see also Fausto*, 251 F.R.D. at 427; *Turner*, 119 F.R.D. at 384; *Powell v. Intern. Foodservice Sys., Inc.*, 52 F.R.D. 205 (D.P.R. 1971); *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94 (S.D. N.Y. 1968).

Finally, the court notes one aspect of the dispute that did not factor into its decision. As discussed above, Banc de Binary and Mr. Laurent refuse to appear for depositions anywhere in the United States because Judge Jones' August 7, 2013 order noted that Defendants may be criminally liable under the federal RICO statute. *See Banc de Binary*, — F. Supp. 2d —, 2013 WL 4042280, at *n. 4. It would be inappropriate for this court to act as prosecutor and order Mr. Laurent to be deposed here as a means of furthering a possible criminal prosecution. *See   Mill-Run Tours, Inc.*, 124 F.R.D. at 551 (citing *Farquhar v. Shelden*, 116 F.R.D. 70, 73 (E.D. Mich. 1987)). However, it would be equally inappropriate for the court to allow Mr. Laurent's potential criminal liability to create a strategic advantage in this case. *See id.* at 552. Accordingly, Mr. Laurent's potential criminal liability has been disregarded. *See id.*

16

**C.**     *Rule 1 Requires the Commission to Bear Costs or Stipulate to an Alternative Procedure*

Having decided that the depositions should be conducted in Washington, D.C., in part because Banc de Binary failed to demonstrate that the depositions may proceed abroad under Rule 28(b), the court now considers Rule 1 and whether reasonable alternatives exist. *See Societe Nationale*, 482 U.S. at 546. Rule 1 instructs courts to construe and administer the rules to "secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. It requires no citation of authority to recognize that discovery is expensive. The Supreme Court has long mandated that trial courts should resolve civil matters fairly but without undue cost. *Brown Shoe Co. v. United States*, 370 U.S. 294, 306 (1962); *Societe Nationale*, 482 U.S. at 546. This directive is echoed by Rule 26, which instructs the court to balance the expense of discovery against its likely benefit. *See* FED. R. CIV. P. 26(B)(2)(iii).

Applying these principles, the court orders the Commission to bear the costs of deposing Banc de Binary, including (1) general deposition costs, (2) Banc de Binary's travel and hotel costs, and (3) any travel or hotel costs incurred by Banc de Binary's Nevada-based counsel. This strikes an appropriate balance between the *Cadent* factors, which demonstrate that Banc de Binary should be deposed in Washington, D.C., and the general presumption that Banc de Binary should be deposed in Cyprus. FED. R. CIV. P. 26(B)(2)(iii) (instructing courts to balance the expense of discovery against its likely benefit).

Payment is regularly ordered in similar circumstances. WRIGHT & MILLER, *supra*, § 2112 at 538; *see also Gitto*, 28 F. Supp. at 310 (stating that courts must avoid undue expense when modifying the general rule that corporate defendants are deposed at their principal place of business); *Hirsch*, 79 F. Supp. at 730 (permitting a deposition near the defendant's satellite office if the examining party pays the deponent's traveling expenses and hotel bill); *Nat. Cmty. Reinvestment Coalition v. NovaStar Fin. Inc.*, 604 F. Supp. 2d 26 (D.D.C. 2009) (requiring a corporate deponent to travel to Washington, D.C. to be

17

deposed but only if plaintiff bears the costs of travel); *Gibson v. Intern. Freighting Corp.*, 173 F.2d 591 (3d Cir. 1949), cert. denied, 338 U.S. 832 (1949) (requiring the examining party to pay opposing counsel's traveling costs).

However, Rule 1 also requires the court to consider alternative procedures that will reduce costs and further traditional notions of justice. *See* FED. R. CIV. P. 1. The rules permit several alternative procedures that would further these goals. For instance, Rule 29 permits the parties to stipulate to alternative procedures for taking an oral deposition. This includes location. *See* FED. R. CIV. P. 29(a).[15] Similarly, Rule 30(b)(4) permits the examining party to conduct depositions "by telephone or other remote means." This includes videoconferencing.  *See ,e.g*, *United States v. McKeeve*, 131 F.3d 1, 10 (1st Cir. 1997); *Yu Tian Li v. United* States, 648 F.3d 524, 531 (7th Cir. 2011); *United States v. Fromme*, 405 F. Supp. 578, 583 (E.D. Cal. 1975). Finally, Rule 31 allows for depositions by written questions. *But see* WRIGHT & MILLER, *supra*, § 2112 at 193 (suggesting that this method is generally not preferred); *accord Nat'l Life Ins. Co. v. Hartford Accid. and Indem. Co.*, 615 F.2d 595, 599–600, n. 5 (3d Cir. 1980).

These alternative procedures are designed to avoid the "serious conflict" that exists here. *See Hyam v. Am. Export Lines*, 213 F.2d 221 (2d Cir. 1954). If the parties elect to proceed with a deposition in Washington, D.C., the Commission will bear considerable costs and Banc de Binary's executives will be compelled to travel 5,663 miles, cross seven time zones, disrupt their business. Accordingly, when sitting on the Second Circuit in *Hyam v. American Export Lines*, Justice Harlan ordered depositions by written questions to avoid a similar "serious conflict" created by an oral deposition. *See id.* at 222–23.

---

[15] For instance, under Rule 29, the parties may stipulate to bearing their own costs and holding the deposition at a midpoint between Los Angeles and Cyprus like Nuuk, Greenland, which is 3,424 miles from Los Angeles and 3,920 miles from Cyprus.

The court follows Justice Harlan's lead. The parties may either proceed with the depositions in Washington, D.C., and bear the costs of that decision, or stipulate to an alternative procedure afforded by the Federal Rules of Civil Procedure.[16] However, the parties are reminded that the depositions will proceed—no matter which location is chosen—as they would at trial. *See* FED. R. CIV. P. 30(c)(1); *Dunn v. Wal-Mart Stores, Inc.*, No. 2:12–cv–1660–GMN, 2013 WL 5940099, at *1 (D. Nev. Nov. 1, 2013).

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that the court's April 17, 2014 hearing (#59) is VACATED.

IT IS FURTHER ORDERED that the Commission's motion to compel (#44) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Banc de Binary's motion for a protective order (#46) is DENIED.

IT IS FURTHER ORDERED that, unless otherwise stipulated, the depositions will proceed in Washington, D.C. The Commission will bear the costs of deposing Banc de Binary, including (1) general deposition costs, (2) Banc de Binary's travel and hotel costs, and (3) any travel or hotel costs incurred by Banc de Binary's Nevada-based counsel.

IT IS FURTHER ORDERED that the parties may STIPULATE to an alternative procedure as permitted by the Federal Rules of Civil Procedure. If the parties do not reach a stipulation by April 4, 2014, the depositions will proceed in Washington, D.C. in accordance with the terms discussed above.

/// /// ///

/// /// ///

/// /// ///

---

[16] If the parties stipulate to videoconferencing, they are ordered to comply with Rule 28(b) to avoid infringing in Cyprus, Israel, or the Republic of Seychelles' judicial sovereignty.

IT IS SO ORDERED.

DATED this 14th day of March, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE