1   JOHN W. BERRY (N.Y. Bar No. 2972610) (admitted *pro hac vice*)
    Email:  berryj@sec.gov
2   AMY JANE LONGO (Cal. Bar No. 198304) (admitted *pro hac vice*)
    Email:  longoa@sec.gov
3   LESLIE A. HAKALA  (Cal. Bar. No. 199414) (admitted *pro hac vice*)
    Email:  hakalal@sec.gov
4
5   Attorneys for Plaintiff
    Securities and Exchange Commission
6   Michele Wein Layne, Regional Director
    Lorraine Echavarria, Associate Regional Director
7   John W. Berry, Regional Trial Counsel
    444 S. Flower Street, Suite 900
8   Los Angeles, California 90071
    Telephone: (323) 965-3998
9   Facsimile: (213) 443-1904

10

11                  **UNITED STATES DISTRICT COURT**

12                       **DISTRICT OF NEVADA**

13

14   SECURITIES AND EXCHANGE              Case No.  2:13-cv-00993-RCJ-VCF
     COMMISSION,
15                                        **PLAINTIFF SECURITIES AND**
                                          **EXCHANGE COMMISSION'S**
16              Plaintiff,                **MEMORANDUM OF POINTS AND**
                                          **AUTHORITIES IN SUPPORT OF ITS**
17          vs.                           **MOTION FOR SUMMARY JUDGMENT**
                                          **AGAINST DEFENDANTS OREN SHABAT**
18   BANC DE BINARY LTD, OREN SHABAT      **LAURENT (F/K/A OREN SHABAT), ET**
     LAURENT (f/k/a OREN SHABAT), ET      **BINARY OPTIONS LTD. AND BO**
19   BINARY OPTIONS LTD., BO SYSTEMS      **SYSTEMS LTD. SEYCHELLES**
     LTD. SEYCHELLES and BDB SERVICES
20   LTD. SEYCHELLES,                     FILED UNDER SEAL PURSUANT TO COURT
                                          ORDER DATED July 14, 2014 (Dkt. No. 69)
21              Defendants.
22
23
24
25
26
27
28
                                          Case No.  2:13-cv-00993-RCJ-VCF

1

### TABLE OF CONTENTS

2  I.      INTRODUCTION ..................................................................................................1

3  II.     STATEMENT OF FACTS ....................................................................................2

4        A.    Background ................................................................................................2

5        B.    Mr. Laurent's Active Role in the "Banc de Binary" Business ..............3

6        C.    The "Banc de Binary" Binary Options Offered and Sold in the U.S................................3

7        D.    The Misconduct of the Defendants ........................................................5

8  III.    ARGUMENT ........................................................................................................5

9        A.    ETBO, BO Systems And Mr. Laurent Have Each Violated Section 5 Of The Securities Act By Offering And Selling Binary Options Without Registration ................6

10

11             1.    The Court has already held that binary options are securities ...............7

12             2.    ETBO and BO Systems offered and sold the securities in the U.S. ......7

13             3.    Mr. Laurent also violated Section 5 .........................................................8

14             4.    The offer and sale of the binary options in the U.S. were never registered with the SEC ........................................................10

15             5.    The unregistered offer and sale of binary options were made through interstate commerce ........................................................11

16

17             6.    There are no applicable exemptions .......................................................11

18                  a.    The interstate exemption does not apply ..................................11

19                  b.    The private placement exemption does not apply .....................12

20                  c.    Regulation D exemptions do not apply .....................................12

21        B.    ETBO, BO Systems And Mr. Laurent Violated Section 15 Of The Exchange Act Because ETBO And BO Systems Acted As Unregistered Broker-Dealers ........................13

22             1.    ETBO and BO Systems are unregistered brokers and dealers ...............14

23             2.    Mr. Laurent is liable as a control person .................................................15

24        C.    The Adverse Inferences Of Mr. Laurent's Fifth Amendment Assertions Further Establish His Violations ........................................................17

25        D.    The Court Should Order Defendants To Disgorge Their Ill-Gotten Gains And Pay Significant Civil Penalties, To Be Determined After The Close Of Discovery ........19

26

27  IV.    CONCLUSION....................................................................................................22

28

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Anderson v. Libby Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................... 5

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................... 5

*Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837(1984).................................................................................. 15

*Doe ex rel. Rudy-Glanzer v. Glanzer*,
    232 F.3d 1258 (9th Cir. 2000) ......................................................... 17, 18

*Doran v. Petroleum Management Corp.*,
    545 F.2d 893 (5th Cir. 1977) ................................................................. 11

*Environmental Action, Inc. v. SEC*,
    895 F.2d 1255 (9th Cir. 1990) ............................................................... 15

*FTC v. Sharp*,
    782 F.Supp. 1445 (D. Nev. 1991) ......................................................... 17

*Hillsborough Investment Corp. v. SEC*,
    276 F.2d 665 (1st Cir. 1960) ................................................................. 11

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1065 (9th Cir. 2000) ............................................................... 15

*In re China Intelligent Lighting and Electronics, Inc. Sec. Litig.*,
    No. CV 11-2768 PSG (SSx), 2012 WL 3834815 (C.D. Cal. Sept. 5, 2012) ................... 16

*Kyung Cho v. UCBH Holdings, Inc.*,
    890 F. Supp. 2d 1190 (N.D. Cal. 2012) ............................................... 16

*Marathon Oil Co. v. United States*,
    807 F.2d 759 (9th Cir.1986), *cert. denied*, 480 U.S. 940, (1987).................... 15

*Massachusetts Fin. Svcs, Inc. v. Securities Investor Protection Corp.*,
    411 F. Supp. 411 (D. Mass. 1976) ....................................................... 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)................................................................................... 5

*Nationwide Life Ins. Co. v. Richards*,
    541 F.3d 903 (9th Cir. 2008) ......................................................... 16, 17, 18

*Norton v. PHC-Elko, Inc.*,
    — F.Supp.3d —, No. 3:13-cv-00169-RCJ-WGC, 2014 WL 4635935
    (D. Nev. Sept. 16, 2014) .......................................................................... 5

*Sanchez v. Vild*,
    891 F.2d 240 (9th Cir. 1989) ................................................................... 5

*SEC v Margolin*,
 1992 WL 279735 (S.D.N.Y. Sept. 30, 1992), *aff'd*, 7 F.3d 220 (2d Cir. 1993) ......... 13, 14

*SEC v. Alternate Energy Holdings Inc.*,
 2014 U.S. Lexis 66401(D. Id. 2014)................................................................. 12

*SEC v. Benson*,
 657 F.Supp. 1122 (S.D.N.Y. 1987)............................................................. 16, 17

*SEC v. Berger*,
 244 F. Supp. 2d 180 (S.D.N.Y. 2001)............................................................. 20

*SEC v. Calvo*,
 378 F.3d 1211 (11th Cir. 2004) ................................................................... 8, 9

*SEC v. Chinese Consol. Benevolent Ass'n*,
 120 F.2d 738 (2d Cir.1941)......................................................................... 6

*SEC v. CMKM Diamonds, Inc.*,
 No. 2:08-cv-0437-LRH-RJJ, 2011 WL 3047476 (D. Nev. July 25, 2011),
 *aff'd in part, rev'd on other grounds*, 729 F.3d 1248 (9th Cir. 2013) ....................... 6, 8, 9

*SEC v. Colello*,
 139 F.3d 674 (9th Cir. 1998) ...................................................................... 17

*SEC v. Cross Fin. Services, Inc.*,
 908 F.Supp. 718 (C.D. Cal. 1995) ............................................................. 19, 20

*SEC v. Devon*,
 977 F.Supp. 510 (D.Me. 1997) .................................................................... 13

*SEC v. East Delta Resources Corp.*,
 No. 10-cv-310 (SJF) (WDW), 2012 WL 3903478 (E.D.N.Y. Aug. 31, 2012)................... 9

*SEC v. Eurobond Exchange*,
 13 F.3d 1334 (9th Cir. 1994) ....................................................................... 6

*SEC v. First Jersey Securities, Inc.*,
 101 F.3d 1450 (2d Cir. 1996)................................................................... 19, 20

*SEC v. First Pacific Bancorp*,
 142 F.3d 1186 (9th Cir. 1998) ................................................................. 19, 20

*SEC v. Global Express Capital Real Estate Inv. Fund I, LLC*,
 No. 2:03-CV-01514-KJD-LRL, 2006 WL 7347289 (D. Nev. March 28, 2006),
 *rev'd in part, aff'd in part*, 289 Fed. Appx. 183 (9th Cir. 2008) ............................. 17, 18

*SEC v. Hansen*,
 1984 WL 2413 (S.D.N.Y. Apr. 6, 1984)........................................................... 14

*SEC v. Hawk*,
 No. 03:05-CV-00172-LRH-VPC, 2007 WL 2257321 (D. Nev. Aug. 3, 2007)............... 15

*SEC v. Holschuh*,
 694 F.2d 130 (9th Cir. 1982) ................................................................. 6, 8, 9

*SEC v. Hughes Capital Corp.*,
   124 F.3d 449 (3d Cir. 1997)............................................................................... 20

*SEC v. JT Wallenbrock & Assoc.*,
   440 F.3d 1109 (9th Cir. 2006) ................................................................... 19, 20

*SEC v. Kenton Capital, Ltd.*,
   69 F. Supp. 2d 1 (D.D.C. 1998) ........................................................ 12, 13, 20

*SEC v. Lauer*,
   No. 03-80612-CIV, 2008 WL 4372896 (S.D. Fla. Sept. 24, 2008) .................. 18

*SEC v. Los Angeles Trust Deed & Mortgage Exchange*,
   186 F. Supp. 830 (S.D.N.Y. 1960)................................................................... 11

*SEC v. Luna*,
   No. 2:10-CV-2166-PMP-CWH, 2014 WL 794202 (D. Nev. Feb. 26, 2014)................... 18

*SEC v. Manor Nursing Centers, Inc.*,
   458 F.2d 1082 (2d Cir. 1972)........................................................................... 20

*SEC v. Martino*,
   255 F. Supp. 2d 268 (S.D.N.Y. 2003)............................................................. 13

*SEC v. Mattera*,
   No. 11 Civ. 8323 (PKC), 2013 WL 6485949 (S.D.N.Y. Dec. 9, 2013) ........... 10

*SEC v. Moran*,
   944 F. Supp. 286 (S.D.N.Y. 1996)................................................................... 20

*SEC v. Murphy*,
   626 F.32d 633 (9th Cir. 1980). ................................................. 6, 8, 9, 10, 11

*SEC v. National Executive Planners, Ltd.*,
   503 F. Supp. 1066 (M.D.N.C. 1980) ............................................................... 13

*SEC v. Palmisano*,
   135 F.3d 860 (2d Cir. 1998)............................................................................ 20

*SEC v. Phan*,
   500 F.3d 895 (9th Cir. 2007) ............................................................................. 6

*SEC v. Platforms Wireless*,
   617 F.3d 1072 (9th Cir. 2010). .................................................... 10, 11, 19, 20

*SEC v. Rabinovich & Assoc.*,
   2008 U.S. Dist. LEXIS 93595 (S.D.N.Y. Nov. 18, 2008) ............................... 12

*SEC v. Ralston Purina Co.*,
   346 U.S. 119 (1953)................................................................................... 10, 11

*SEC v. Rind*,
   991 F.2d 1486 (9th Cir. 1993) ........................................................................ 19

*SEC v. Rogers*,
   790 F.2d 1450 (9th Cir. 1986) .......................................................................... 8

*SEC v. Small Business Capital Corp.*,
No. 5:12-CV-3237 EJD, 2013 WL 4455850 (N.D. Cal. Aug. 16, 2013) ............ 13, 14, 16

*SEC v. Stratocomm Corp.*,
No. 1:11-cv-1188, 2014 WL 689116 (N.D.N.Y. Feb. 19, 2014).........................9

*SEC v. Todd*,
642 F.3d 1207(9th Cir. 2011) ................................................................. 14, 15

*SEC v. Tourre*,
No. 10 Civ. 3229(KBF), 2013 WL 2407172 (S.D.N.Y. June 4, 2013) ........................ 10

*SEC v. Verdiramo*,
890 F.Supp.2d 257 (S.D.N.Y. 2011).........................................................9

*Taylor v. List*,
880 F.2d 1040 (9th Cir. 1989) .........................................................5

*Western Fed. Corp. v. Erickson*,
739 F.2d 1439 (9th Cir. 1984) .........................................................11

## FEDERAL STATUTES

## Securities Act of 1933

Section 3(a)(11)
[15 U.S.C. § 77c(a)(11)] .........................................................11

Section 4(a)(2)
[15 U.S.C. § 77d(a)(2)] .........................................................11

Section 5
[15 U.S.C. §77e(a)]................................................. 1, 6, 8, 9, 10, 21

Section 5(a)
[15 U.S.C. §77e(a)]................................................. 5, 6, 8

Section 5(c)
[15 U.S.C. § 77e(c)]................................................. 5, 6, 8

Section 20(d)
[15 U.S.C. §§ 77t(d)] .........................................................20

## Securities Exchange Act of 1934

Section 3(a)(4)
[15 U.S.C. § 78c(a)(4)] .........................................................13

Section 15(a)
[15 U.S.C. § 78o] ................................................. 1, 2, 15, 16, 19, 21

Section 15(a)(1)
[15 U.S.C. § 78o(a)(1)] .........................................................12, 14

Section 20(a)
    [15 U.S.C. § 78t(a)] ................................................................................. 14

Section 21(d)(3)
    [15 U.S.C. §§ 78u(d)(3)] ......................................................................... 20

**FEDERAL REGULATIONS**

17 CFR § 230.405 ..................................................................................... 15

17 CFR § 230.504 ..................................................................................... 12

17 CFR § 230.505 ..................................................................................... 12

17 CFR § 230.506(b) ................................................................................ 12

17 CFR § 230.506(c) ................................................................................ 12

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 30(b)(6) .............................................................................. 7

Fed. R Civ. P. 56(a) ................................................................................... 5

**OTHER AUTHORITIES**

JOBS Act
    Section 201(a) ..................................................................................... 12

1

**I.     INTRODUCTION**

2        This motion for summary judgment by Plaintiff Securities and Exchange Commission (the

3   "SEC") is directed to two of the corporate defendants— ET Binary Options Ltd. ("ETBO") and BO

4   Systems Ltd. Seychelles ("BO Systems")—and the individual defendant, Mr. Oren Shabat Laurent.

5   ETBO and BO Systems, along with the other corporate defendants, Banc de Binary Ltd ("BdB

6   Ltd") and BDB Services Ltd. Seychelles, were part of an affiliated group of companies that the

7   defendants call the "Banc de Binary Group."  Mr. Laurent founded ETBO and the "Banc de Binary"

8   business, was ETBO's CEO and its 50% shareholder, and was the sole beneficiary owner of BO

9   Systems.

10       Summary judgment is warranted because the evidence of ETBO's, BO Systems's and Mr.

11  Laurent's securities law violations is undisputed.  The business of the Banc de Binary Group is to

12  offer an internet-based trading platform where investors can buy what are called "binary options"—

13  investments that pay out if the value of the underlying security, like a U.S. stock, goes up or down,

14  sometimes in a matter of minutes.  The Court has already held that these binary options are

15  securities under the federal securities laws.  *See* Dkt. No. 31.

16       ETBO and BO Systems admit, and do not deny, that they marketed, offered and sold these

17  binary options to U.S. investors from 2010 to 2013.  It is also undisputed that ETBO and BO

18  Systems were acting as brokers and dealers in the U.S.  "Brokers" working for and on behalf of

19  these two companies regularly communicated with U.S. investors, cold-calling investors, emailing

20  and Skyping with them, giving them trading advice and encouraging them to deposit money and

21  buy binary options.  And there is no dispute that ETBO and BO Systems made money on a

22  transaction basis—the companies could make money with every purchase of a binary option.

23  Moreover, ETBO and BO Systems were intimately and regularly involved in every step of the U.S.

24  investors binary option purchases, because those investors were only able to make those

25  transactions on the internet-based trading platforms on "Banc de Binary" websites.

26       Despite this, and although the U.S. federal securities laws required it, ETBO and BO

27  Systems never registered the offer and sale of binary options with the SEC, and they never

28  registered as brokers or dealers with the SEC.  Therefore, it is beyond dispute that they violated

Section 5 of the Securities Act of 1933 (the "Securities Act"), and Section 15(a) of the Securities

Exchange Act of 1934 (the "Exchange Act").

As for Mr. Laurent, the evidence of his violations are similarly irrefutable.  He admits he

"████████" and was "███████" of the Banc de Binary business from 2010 to 2012 when

ETBO was the company transacting with U.S. investors and he was its CEO.  He also does not deny

he was always actively involved in the marketing of these binary options, even after he no longer,

allegedly, was CEO.  Indeed, the "Banc de Binary" websites prominently displayed letters from him

as the "CEO" in 2010 and 2012, and listed him as the key member of the "Executive Team."  He

also admits that he participated in "████████" videos, where he extolled the putative virtues of

trading in binary options on the "Banc de Binary" websites.  Yet when asked specific questions

about his involvement in the illegal activity charged in this action, he pled the Fifth Amendment.

The undisputed evidence against him, and the adverse inference from his Fifth Amendment

assertions, overwhelmingly establish that Mr. Laurent directly violated Section 5 of the Securities

Act by actively participating in the unregistered offer or sale of binary options, and that he should

be held liable for ETBO's and BO Systems's primary violations of Section 15(a) of the Exchange

Act because he was a "controlling person" of these two defendants.

Therefore, on this irrefutable and undisputed record, the SEC asks that this Court grant

summary judgment against ETBO, BO Systems and Mr. Laurent on all claims asserted by the SEC

against them.

II.     **STATEMENT OF FACTS**

    A.     **Background**

The defendants in this case are a group of affiliated Israeli and Cypriot companies that are

called the "Banc de Binary Group" and that operate online "binary option" trading platforms under

the "brand" name "Banc de Binary."  *See* SEC Stmt. of Undisputed Facts ("SEC SUF") ¶ 1.  All of

the corporate defendants are affiliates of one another and share common ownership.  *See id.* ¶¶ 1, 9,

10.  The sole individual defendant, Mr. Laurent, owns all or 50% (along with his father) of BdB

Ltd, ETBO and BO Systems, and used to own BDB Services until recently.  *See id.* ¶¶ 13-15.

**B.      Mr. Laurent's Active Role in the "Banc de Binary" Business**

Mr. Laurent founded the "Banc de Binary" business. *See id*. ¶ 116.  He developed the computer algorithms that are at the heart of the internet-based trading platform that was used to offer the binary options to investors. *See id*. ¶ 17.  He was the CEO of ETBO when ETBO was the only company operating the business, from 2010 to 2012. *See id*. ¶¶ 18-21.  During that time, he "█████████████" and "██████████," including handling the marketing for the business. *Id*. ¶ 20.  He was in charge of marketing and promoting the "Banc de Binary" brand worldwide, including to the U.S. *See id*. ¶ 20.  Even when other people allegedly took over the formal role of CEO, Mr. Laurent continued his active involvement in the company. *See id*. ¶¶ 22-35.[1]

As part of his role in marketing the business, Mr. Laurent participated in "███████████" videos about the "Banc de Binary" binary option internet-based trading platforms. *See id*. ¶¶ 30-32.  In two videos posted on the internet, he was interviewed, highlighting his role in founding of the business, touting the binary option trading platform as an investment strategy and speaking highly of "████████" as the "██████████████" *Id.*  The "Banc de Binary" websites also posted "letters" from him as the "CEO" of the business, and listed him as the CEO on the "Executive Team." *Id*. ¶¶ 27-29.

**C.      The "Banc de Binary" Binary Options Offered and Sold in the U.S.**

As this Court already held, "binary options" are securities (*see* Dkt. Nos. 28, 31), whose payout is contingent on the future value of an underlying asset. *See id*. ¶¶ 36, 38, 41.  They are called "binary" options because they have only two possible outcomes—the investor will either receive a pre-determined amount of money or nothing at all, depending on whether the underlying asset increases or decreases in price. *See id*.  Investors in "Banc de Binary" binary options can buy options whose payouts are contingent on the price of a company's stock or on stock indices like the S&P 500, as well as commodities and currencies. *See id*.  The "Banc de Binary" website portrays the binary options as "investments," and refers to the "trading" of options. *Id*. ¶ 39.

---

[1] Although Mr. Laurent claimed to have relinquished the role of CEO sometime in 2012, that is not what the "Banc de Binary" website told investors.  In September 2012, the website posted a "Letter from CEO" that he signed and reviewed, along with his picture. *See* SEC SUF ¶ 28.

"Banc de Binary" binary options were offered and sold to U.S.-based customers.  *See id.* ¶¶ 99-112.  The binary options are bought and traded on an internet-based trading platform found at www.bbinary.com or www.bancdebinary.com.  *See id.* ¶¶ 39, 40, 43.  From the beginning, in or about 2010 when the "Banc de Binary" business was started, until at least 2013, these websites were made available to and accessed by U.S.-based customers.  *See id.* ¶¶ 46-47.

"Banc de Binary" "brokers" would also reach out and contact U.S.-based customers to encourage them to deposit money into trading accounts and buy binary options on these websites.  *See id.* ¶¶ 49-60, 61-63.  These brokers offered advice, identified certain options to trade in, and helped the investors with their trading.  *See id.*  Indeed, the SEC has submitted uncontroverted testimony from three U.S. investors who bought "Banc de Binary" binary options on the websites.  *See id.* ¶¶ 64-69, 70-74, 75-82.  "Banc de Binary" brokers communicated with each of these investors, pushing them to deposit money and buy binary options.  *See id.*

From 2010 to 2013, ETBO and BO Systems conducted the offer and sale of the "Banc de Binary" binary options in the U.S.  *See id.* ¶¶ 50-52, 99.  The purchase of binary options occurred on a regular basis on the "Banc de Binary" websites.  *See id.* ¶¶ 121-123.  Any U.S. investor trading binary options under the "Banc de Binary" brand were either customers of ETBO or BO Systems during this time.  *See id.* ¶¶ 96-99, 108-109.  Moreover, the brokers who interacted with U.S. investors either worked directly for ETBO or on behalf of BO Systems.  *See id.* ¶¶ 50-53, 99.[2]

ETBO and BO Systems stood to make money every time an investor bought or traded binary options on the websites—that is, their compensation was transaction-based.  *See id.* ¶¶ 116-120.  When a U.S. investor deposited money to buy binary options, that money was deposited into an ETBO bank account or an account (held by BdB Ltd) where the funds were held in BO Systems's behalf.  *See id.* ¶¶ 117-118.

---

[2] The SEC contends that BdB Ltd and BDB Services also interacted and transacted with U.S.-based investors, and offered and sold binary options in the U.S.  These two defendants, however, are not the subject of this motion, as discovery disputes are still pending regarding their incomplete document productions and discovery responses.  *See* Dkt. No. 70.  Given this lack of fulsome discovery from these defendants, the SEC has sought an extension of the schedule for discovery and for filing dispositive motions, and reserves the right to file a dispositive motion with respect to these defendants to the extent its motion to compel is granted and the schedule is extended.  *See id.*

ETBO and BO Systems do not dispute the fundamental facts that establish the basis of their violations of the federal securities laws. Both of these defendants admit that they offered and sold binary options to U.S. investors (*see id.* ¶ 99), that "███████" or "████████████" interacted with U.S. investors and offered trading and investment advice (*see id.* ¶¶ 49-53), that they held investor money on the investor's behalf (*see id.* ¶¶ 117-118), and that each company was compensated on a transaction-basis. *See id.* ¶ 120.

Moreover, ETBO and BO Systems do not dispute that they never registered the offer or sale of binary options with the SEC. *See id.* ¶¶ 112-115. Nor have they ever registered as brokers or dealers with the SEC. *See id.* ¶¶ 124-126.

### D.    The Misconduct of the Defendants

Although this SEC enforcement action does not include fraud charges, the defendants concede they have misrepresented facts to U.S. investors. The "Banc de Binary" websites and "Banc de Binary" brokers told U.S. investors that the business had an office or headquarters in New York, on Wall Street. *See id.* ¶¶ 83, 86. The brokers also told investors that they actually lived and worked in New York. *See id.* None of that was true. *See id.* ¶¶ 84, 87. Mr. Laurent himself testified that this was a "██" and "█████" *Id.* ¶ 88.

In January 2013, before this action was filed, the "Banc de Binary" websites told U.S. investors that the websites "would not take orders from United States persons," due to instructions from U.S. regulators (the Commodity Futures Trading Commission, or CFTC). *See id.* ¶ 91. That was not true either. It is undisputed that U.S. investors could continue to buy and trade binary options until at least May or June 2013. *See id.* ¶ 92.

Even after this Court (in this action and in the parallel CFTC enforcement action) specifically barred BdB Ltd and its affiliates from offering and selling binary options in the U.S., the evidence shows that they kept on doing exactly that, by accepting money from at least one investor they knew lived in the U.S. and encouraging him to trade binary options. *See id.* ¶¶ 93-95.

### III.   **ARGUMENT**

Summary judgment is appropriate when there are no genuine disputes as to any material fact regarding the plaintiff's claims. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477

1   U.S. 317, 322 (1986); *Norton v. PHC-Elko, Inc.*, — F.Supp.3d —, No. 3:13-cv-00169-RCJ-WGC,

2   2014 WL 4635935, *2-3 (D. Nev. Sept. 16, 2014).  The movant bears the initial burden of

3   identifying the evidence that demonstrates the absence of any material fact.  *See Celotex*, 477 U.S.

4   at 323.  Once the movant has meet its burden, the nonmoving party may not rest on conclusory

5   allegations or bald assertions, *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), but must

6   come forward with significant probative evidence tending to support its claim that material, triable

7   issue of fact remain.  *See Anderson v. Libby Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Sanchez v.*

8   *Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  The evidence set forth by the non-moving party must be

9   sufficient, taking the record as a whole, to allow a rational jury to find for the non-moving party.

10  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Consequently,

11  "[t]he mere scintilla of evidence in support of the [nonmoving party's] position will be insufficient."

12  *Liberty Lobby*, 477 U.S. at 252.

13  **A.      ETBO, BO Systems And Mr. Laurent Have Each Violated Section 5 Of The**

14  **Securities Act By Offering And Selling Binary Options Without Registration**

15          ETBO, BO Systems and Mr. Laurent have each violated Sections 5(a) and 5(c) of the

16  Securities Act because they have offered and sold binary options to U.S.-based customers without

17  having registered those securities or registered their offer and sale of the securities with the SEC.

18  *See* 15 U.S.C. §77e(a), (c).  Both of these statutory provisions prohibit the unregistered offer or sale

19  of securities in interstate commerce, unless an exemption from registration applies.  *See SEC v.*

20  *Phan*, 500 F.3d 895, 901-02 (9th Cir. 2007); *SEC v. Eurobond Exchange*, 13 F.3d 1334, 1338 (9th

21  Cir. 1994); *SEC v. Murphy*, 626 F.32d 633, 640 (9th Cir. 1980).

22          Section 5 operates as a strict liability statute.  "Section 5(a)(1) 'broadly prohibits sales of

23  securities irrespective of the character of the person making them.'"  *SEC v. CMKM Diamonds,*

24  *Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013) (*quoting SEC v. Chinese Consol. Benevolent Ass'n*, 120

25  F.2d 738, 741 (2d Cir.1941)).  Thus, a defendant's intent is irrelevant, and so the SEC does not need

26  to prove that the defendants knowingly, recklessly or even negligently committed the Section 5

27  violations.  *See SEC v. Holschuh*, 694 F.2d 130, 137 n.10 (9th Cir. 1982) ("good faith is not relevant

28  to whether there has been a primary violation of the registration requirements").  Rather, in order to

prove a Section 5 violation, the SEC only needs to prove that (1) the defendants, directly or indirectly, offered or sold securities; (2) no registration was in effect or filed with the SEC for those securities; and (3) interstate transportation or communication or the mails were used in connection with the offer and sale.  *See* 15 U.S.C. §§ 77e(a), 77e(c); *Phan*, 500 F.3d at 902.

All of these elements are easily met here for ETBO, BO Systems and Mr. Laurent, as the facts underlying each of the defendants' Section 5 violations are all beyond dispute.

### 1.     The Court has already held that binary options are securities

The Court has already determined the threshold issue for establishing a Section 5 violation—that the binary options that the defendants offered and sold to U.S.-based customers were "securities" under the federal securities laws.  In its order granting a preliminary injunction against all of the defendants, the Court directly addressed this threshold issue, and found that "binary options are 'securities' under the statute."  Dkt. No. 31 (order denying motion for reconsideration and granting preliminary injunction) at 10-11; *see also* Dkt. No. 28 (initial order granting preliminary injunction) at 10-11.

### 2.     ETBO and BO Systems offered and sold the securities in the U.S.

There is also no dispute that ETBO and BO Systems directly offered and sold securities— the binary options—to U.S.-based investors.  The "Banc de Binary" options were offered and sold through the "Banc de Binary" website trading platforms.  *See* SEC SUF ¶¶ 43-48.  It is undisputed that this internet-based trading platform was available to and accessed by U.S. investors from the very beginning of the business (in 2010) until mid-2013.  *See id.*  In fact, ETBO's and BO Systems's designated Rule 30(b)(6) witness conceded that the websites were "available to everybody."  *Id.* ¶ 47.

The defendants' sales representatives—that is, their "█████" as Mr. Laurent and the websites correctly called them—also actively "█████" potential investors, gave trading advice or "signals," and encouraged investors to deposit money to buy and trade binary options.  *See id.* ¶ 53; *see also id.* ¶¶ 64-82.  And from 2010 to early 2013, no one instructed these brokers not to contact U.S.-based investors.  *See id.* ¶ 103.  In fact, the SEC has presented sworn, irrefutable testimony from three U.S. investors who were contacted by brokers and encouraged to deposit

money and buy binary options on the "Banc de Binary" website in 2012 and 2013. *See id.* ¶¶ 64-82.

In addition, ETBO and BO Systems openly concede that they transacted with and, most importantly, offered and sold binary options to U.S.-based investors from 2010 to 2013. *See id.* ¶¶ 99-111.



Berry Decl. Ex. A (Kosma Depo. Tr.) at 240:10-24; *see also* SEC SUF at ¶ 99.[3]  ETBO and BO Systems also admitted in their discovery responses that they transacted with U.S.-based investors. *See id.* ¶¶ 109-111.  Indeed, in an attempt to forestall the SEC's motion to compel (Dkt. No. 70-1), the defendants argued that discovery is no longer warranted because the liability of ETBO and BO Systems is "uncontested."  Dkt. No. 71 (Def. Opp.) at 2:12, 3:12-15.

### 3. Mr. Laurent also violated Section 5

The undisputed evidence also establishes that Mr. Laurent violated Section 5.  Under Section 5(a) or Section 5(c) of the Securities Act, a defendant may be liable for either "directly *or* indirectly" offering and selling unregistered securities.  15 U.S.C. § 77e(a), (c) (emphasis added). Thus, as the Ninth Circuit has made clear, a person can be held primarily liable for actively participating in the unregistered offer or sale, and "liability under § 5 is not confined only to the person who passes title to the security."  *Murphy*, 626 F.2d at 649; *see also SEC v. Rogers*, 790 F.2d

---

[3] It is the defendants' contention that ETBO only transacted with, and offered and sold binary options to, U.S. investors from 2010 to 2012, and that BO Systems took over that role from 2012 to part of 2013.

1450, 1456 (9th Cir. 1986). Rather, a person can be held liable for actively participating in the

unregistered offer or sale. *See id.* As this Court recently explained:

> For a defendant to be liable for "indirectly" offering to sell securities in
> violation of Section 5, their role in the transaction must be significant one. A
> significant role includes a defendant who was both a "necessary participant"
> and a "substantial factor" in the transaction.

*SEC v. CMKM Diamonds, Inc.*, No. 2:08-cv-0437-LRH-RJJ, 2011 WL 3047476, *2 (D. Nev. July

25, 2011), *aff'd in part*, *rev'd on other grounds*, 729 F.3d 1248 (9th Cir. 2013) (*citing Murphy*, 626

F.2d at 648, 652, Rogers, 790 F.2d at 1456); *see also Rogers*, 790 F.2d at 1456 ("defendant's

conduct [must] be both necessary to, and a substantial factor in, the unlawful transaction"). The

Ninth Circuit explained this test as follows:

> The first prong of this standard requires a defendant's participation to be a
> "but for" cause of the unlawful sale, and the second requires the participation
> to be more than "*de minimis*." While "substantial participation" is a concept
> without precise bounds, previous cases suggest that one who plans a scheme,
> or, at the least, is a substantial motivating factor behind it, will be held liable
> as a seller. Fringe participants, although possibly liable as aiders and abettors,
> are not liable as sellers under section 5.

*Rogers*, 790 F.2d at 1456 (citations omitted); *see also SEC v. Calvo*, 378 F.3d 1211, 1215 (11th Cir.

2004) (*citing Murphy*, 626 F.2d at 649-652); *Holschuh*, 694 F.2d at 139-140 (*citing Murphy*, 626

F.2d at 650-652).

Mr. Laurent, ETBO's CEO and director, and BO System's sole beneficiary owner, clearly

satisfies this standard. He was far from a "fringe participant," and his role was anything but "*de

minimis*." Mr. Laurent founded the "Banc de Binary" business for the sole purpose of offering and

selling binary options to investors. *See SEC SUF ¶¶ 16, 96.* Indeed, he created the software for the

internet-based trading platform. *See id.* ¶ 17. As Mr. Laurent himself acknowledged, when he was

the CEO of ETBO from 2010 to sometime around 2012, he "▮▮▮▮▮▮▮▮" and "▮▮▮▮▮▮▮▮▮▮,"

including handling the marketing of the binary option trading. *Id.* ¶¶ 20-21; *see Murphy*, 626 F.2d

at 636, 652 (affirming summary judgment and permanent injunction for Section 5 violations after

trial for defendant who founded the company and was its president, was actively involved in the

promotion of the offering, "devised the corporate financing scheme," and "spoke at broker-dealer

sales seminars); *Holschuh*, 694 F.2d at 140 (same for defendant who was "designer" of the "greater plan," and was the president and "extensively involved in the formation" of the issuer); *CMKM Diamonds*, 2011 WL 3047476 at \*4, *aff'd in part*, *rev'd on other grounds*, 729 F.3d 1248 (9th Cir. 2013) (granting summary judgment, holding CEO of broker-dealer liable for Section 5 violation); *SEC v. Verdiramo*, 890 F.Supp.2d 257, 271 (S.D.N.Y. 2011) (same for defendant who was CEO of issuer but "never sold a single share").

Mr. Laurent was also always actively involved in the marketing and promotion of the "Banc de Binary" trading platform for binary options, even when he (allegedly) did not have the title of CEO.  *See* SEC SUF ¶¶ 21-26.  "Banc de Binary" websites, where the securities were offered and sold, prominently displayed him with his photograph and letters signed by him to potential investors; and he had "▇▇▇▇▇▇▇" videos made of him extolling the virtues of trading binary options.  *See id.* ¶¶ 26-32; *SEC v. Stratocomm Corp.*, No. 1:11-cv-1188, 2014 WL 689116, at \*17 (N.D.N.Y. Feb. 19, 2014) (granting summary judgment, holding defendant, who was CEO and sole director of issuer and "marketed the stock throughout the country," liable under Section 5); *SEC v. East Delta Resources Corp.*, No. 10-cv-310 (SJF) (WDW), 2012 WL 3903478, at \*5 (E.D.N.Y. Aug. 31, 2012) (after bench trial, holding defendant liable for Section 5 because his role "was capital-raising and promotional").  He also received, through dividends and other compensation, the proceeds of the binary option sales.  *See id.* ¶ 33; *Calvo*, 378 F.3d at 1215 (affirming summary judgment for Section 5 violation of principal of pump-and-dump partnership scheme who received proceeds of sales); *SEC v. Mattera*, No. 11 Civ. 8323 (PKC), 2013 WL 6485949, at \*10 (S.D.N.Y. Dec. 9, 2013) (granting summary judgment, holding defendant, who assisted in creation of an issuer and was "actively involved in the process and compensated for his role," liable under Section 5).

All of this undisputed evidence is more than sufficient to hold Mr. Laurent liable under Section 5 as both a necessary participant and a substantial factor in the unregistered offer and sale of binary options.

**4.    The offer and sale of the binary options in the U.S. were never registered with the SEC**

There is also no dispute that the offer and sale of these securities were never registered with

the SEC.  *See* SEC SUF ¶¶ 112-115.  The defendants have conceded this point in their answer to the SEC's complaint, in their discovery response and in their corporate designee's deposition.  *See id*.

### 5. The unregistered offer and sale of binary options were made through interstate commerce

Finally, the defendants offered the binary options over the internet, so there is no dispute that interstate communication or the mails were used in connection with the unregistered offer and sale of these securities.  *See id*. ¶¶ 39-40, 43-48; *see also*, *e.g.*, *SEC v. Tourre*, No. 10 Civ. 3229 (KBF), 2013 WL 2407172, *11 (S.D.N.Y. June 4, 2013).

### 6. There are no applicable exemptions

Having established the defendants' *prima facie* Section 5 violation, the burden of proof shifts to the defendants to show that an exemption from registration was available for the offer or sale of the securities here.  *See SEC v. Ralston Purina Co*., 346 U.S. 119, 124-26 (1953); *Murphy*, 626 F.2d at 641.  Exemptions from registration, however, are construed narrowly "in order to further the purpose of the [Securities] Act:  To provide full and fair disclosure of the character of the securities, and to prevent frauds in the sale thereof."  *SEC v. Platforms Wireless*, 617 F.3d 1072, 1087 (9th Cir. 2010).

The defendants have never asserted—in their answers to the complaints or any other time in this litigation—that these offerings were exempt from registration.  Nor could they, since they cannot meet their burden to prove an exemption applied here.

### a. The interstate exemption does not apply

First, the intrastate exemption under Section 3(a)(11) of the Securities Act is not available. *See* 15 U.S.C. § 77c(a)(11).  This exemption is very narrow because it requires that all offers and sales be made only to *bona fide* residents of just one state.  *See SEC v. Los Angeles Trust Deed & Mortgage Exchange*, 186 F. Supp. 830, 871 (S.D.N.Y. 1960) (*citing Hillsborough Investment Corp. v. SEC*, 276 F.2d 665, 667 (1st Cir. 1960)).  There is no relief for substantial compliance—even if a single security was offered to just one investor in a second state, the exemption cannot apply.  *See id*.  Here it is undisputed that binary options were offered and sold to investors in several states, including Nevada, California and Minnesota.  *See* SEC SUF ¶¶ 64, 70, 75.  Therefore, the interstate

1   exemption cannot apply.

2   ##### b.     The private placement exemption does not apply

3          The Securities Act's private placement exemption does not apply here either.  Section

4   4(a)(2) of the Securities Act exempts offerings that are non-public.  *See* 15 U.S.C. § 77d(2)

5   (exempting "transactions by an issuer not involving any public offering").  This exemption is

6   designed for offerings where the offerees can essentially "fend for themselves" and "have access to

7   the kind of information to which registration would disclose."  *Ralston Purina*, 346 U.S. at 125,

8   127.  "Stated another way, a limited distribution to highly sophisticated investors, rather than a

9   general distribution to the public, is not a public offering."  *Platforms Wireless*, 617 F.3d at 1090-

10  91; *see also Western Fed. Corp. v. Erickson*, 739 F.2d 1439, 1442 (9th Cir. 1984).

11         The undisputed record clearly establishes that the offer and sale of binary options is not

12  exempt from registration under the non-public offering exemption for Section 4(a)(2).  There were

13  thousands of investors here in the U.S.  *See* SEC SUF ¶ 101; *Murphy*, 626 F.2d at 645-46 (stating

14  that "'the more offerees, the more likelihood that the offering is public'" and finding that more than

15  400 offers "clearly suggests a public rather than a private placement") (*quoting Doran v. Petroleum*

16  *Management Corp.*, 545 F.2d 893, 901 (5th Cir. 1977)).  Also, while the defendants

17  indiscriminately sold binary options to a wide variety of investors, they never even tried to

18  determine the sophistication of the investors.  *See* SEC SUF ¶¶ 68, 74, 78-79.  In fact, the record

19  shows that the defendants' brokers actively pushed binary options, even on people who expressly

20  told the brokers of their lack of understanding of the investments and their personal financial

21  difficulties.  *See id.*; *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 1 (D.D.C. 1998) (holding that

22  defendants did not qualify for exemption under this factor because it failed to show that the offer

23  was not a general solicitation); *SEC v. Alternate Energy Holdings Inc.*, No. 1:10-CV-00621-EJL-

24  REB, 2014 WL 2515710, at *9-12 (D. *Id.* May 13, 2014) (finding that large offerings that used

25  advertising and outside help were public) (*citing Kenton Capital*, 69 F. Supp. 2d at 1).

26  ##### c.     Regulation D exemptions do not apply

27         Finally, the other common exemption—Regulation D—has no applicability here.  That

28  regulation, promulgated under the Securities Act, contains safe harbor rules that provide registration

exemptions for limited offers and sales of securities.  But none of the Regulation D rules provide a safe harbor here because these exemptions cannot be used for offerings made through general solicitation.  Because the binary options were marketed worldwide and broadly in the U.S., Regulation D cannot apply.  *See SEC v. Rabinovich & Assoc.*, No. 07 Civ. 10547(GEL), 2008 WL 4937360, *4 (S.D.N.Y. Nov. 18, 2008) ("general solicitation of purchases by means of cold calls to prospective investors and a website available to the general public precludes the applicability of the principal exceptions to the registration requirement"); *see also* 17 CFR § 230.502(c).[4]

### B.   ETBO, BO Systems And Mr. Laurent Violated Section 15 Of The Exchange Act Because ETBO And BO Systems Acted As Unregistered Broker-Dealers

Section 15(a)(1) of the Exchange Act provides that, absent an exception or exemption, any broker or dealer that uses the mails or any means of interstate commerce to effect transactions in, or to induce or attempt to induce purchases or sales of securities (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) must register with the SEC.  *See* 15 U.S.C. § 78o(a)(1).  The SEC is not required to show scienter to establish a violation of Section 15(a)(1).  *See SEC v. National Executive Planners, Ltd.*, 503 F. Supp. 1066, 1073 (M.D.N.C. 1980).

Under the Exchange Act, a "broker" is "any person engaged in the business of effecting transactions in securities for the account of others."  15 U.S.C. § 78c(a)(4).  Although the phrase "engaged in the business" is not defined in the statute, courts have held that regularly participating in the trading of securities on behalf of someone is the primary indicia of being "engaged in the business."  *Kenton Capital*, 69 F.Supp.2d at 12-13.  Regularity of participation is demonstrated by, among other things, active solicitation and the dollar amount of securities sold, and the extent to which advertisement and investor solicitation were utilized.  *See National Executive Planners*, 503 F.Supp. at 1073 (defendant actively solicited clients, and sold $4.3 million worth securities on their

---

[4] Regulation D is comprised of four transactional exemptions:  Rule 504 and Rule 505 (which were adopted under Section 3(b) of the Securities Act), Rule 506(b) (which was adopted under Section 4(a)(2) of the Securities Act) and Rule 506(c) (which was adopted under Section 201(a) of the JOBS Act).  Rule 506(c) did not become effective on September 23, 2013, several months after this action was brought.  *See* SEC Release No. 33-9415 (July 10, 2013), available at http://www.sec.gov/rules/final/2013/33-9415.pdf.

behalf); *SEC v Margolin*, 1992 WL 279735, at *5 (S.D.N.Y. Sept. 30, 1992), *aff'd*, 7 F.3d 220 (2d Cir. 1993) (defendant "participated in dozens of transactions for various clients" and "engaged in other conduct which provided evidence of brokerage activity such as receiving transaction-based compensation, advertising for clients, and possessing client funds and securities").

In addition to regularity of participation, the statutory definition of broker also requires that the defendant effect securities transactions on behalf of others.  *See SEC v. Devon*, 977 F.Supp. 510, 518 (D. Me. 1997) (defendants were broker-dealer because "solicited investors by phone and in person," "in the hope that potential investors would deposit money in the account," and thus "actively sought to effectuate securities transactions"); *see also SEC v. Small Business Capital Corp.*, No. 5:12-CV-3237 EJD, 2013 WL 4455850, *14 (N.D. Cal. Aug. 16, 2013).  Also, a person may be found to be acting as a broker if he participates in securities transactions "at key points in the chain of distribution."  *Small Business Capital*, 2013 WL 4455850, at *15; *Massachusetts Fin. Svcs, Inc. v. Securities Investor Protection Corp.*, 411 F. Supp. 411, 415 (D. Mass. 1976).  Some factors indicating that a person or entity may be a broker include actively finding investors to purchase securities, giving advice, being involved in the negotiations between issuers and investors, and receiving transaction-related compensation.  *See*, *e.g.*, *SEC v. Martino*, 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003) (listing factors) (*citing SEC v. Hansen*, No. 83 Civ. 3692, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984) (defendant "was an active and aggressive finder of investors and he frequently gave those investors extensive advice")).  Other indicia of broker activity include facilitating or participating in the execution of transactions and handling the securities or funds of others in connection with securities transactions.  *See Margolin*, 1992 WL 279735, at *5; *Small Business Capital*, 2013 WL 4455850, at *15.

**1.    ETBO and BO Systems are unregistered brokers and dealers**

Both ETBO and BO Systems are clearly "broker-dealers" under these criteria.  Their sales representatives are called "████████" SEC SUF ¶ 53.  These brokers "████████" potential investors, give trading advice (or "trading signals"), and encourage the investors to deposit money in trading accounts and buy binary options.  *See id*. ¶¶ 55-59, 61-63.  The "Banc de Binary" websites are the sole means for an investor to trade in binary options with ETBO or BO Systems.  *See id*. ¶¶ 39, 40.

Through this website, as well as emails and other internet-based forms of outreach, investors are solicited to buy and trade binary options on the internet-based "Banc de Binary" trading platform. *See id*. ¶¶ 39-40, 43-48.

Moreover, ETBO and BO Systems were compensated as brokers—on a per-transaction basis—and held customer money. Each time an investor purchased a binary option, ETBO and BO Systems would earn a fee. *See id*. ¶ 120. When an investor signed up to trade on the "Banc de Binary" websites, they deposited money to be held on their behalf until the trades were consummated. *See id*. ¶¶ 116-119. ETBO had its own bank account where these customers funds were held (*see id*. ¶ 117), and BdB Ltd held BO Systems customer funds on behalf of BO Systems. *See id*. ¶ 118.

Despite this, it is undisputed that neither ETBO nor BO Systems ever registered as brokers or dealers with the SEC. *See id*. ¶¶ 124-126. Therefore, the undisputed evidence establishes that both companies violated Section 15(a)(1) of the Exchange Act by acting as unregistered broker-dealers.

### 2.     Mr. Laurent is liable as a control person

Mr. Laurent is also liable for ETBO's and BO Systems's violation of Section 15(a) because he is a "control person" under Section 20(a). *See* 15 U.S. Code § 78t(a); *SEC v. Todd*, 642 F.3d 1207, 1223-1224 (9th Cir. 2011). In order to establish that a defendant is liable under Section 20(a) of the Exchange Act, the SEC must prove "(1) there is a violation of the Act and (2) the defendant directly or indirectly controls any person liable for the violation." *Todd*, 642 F.3d at 1223 (*citing Howard v. Everex Sys., Inc*., 228 F.3d 1065 (9th Cir. 2000)); *see also SEC v. Hawk*, No. 03:05-CV-00172-LRH-VPC, 2007 WL 2257321, *2-3 (D. Nev. Aug. 3, 2007). Here, as discussed above, there is no question ETBO and BO Systems illegally acted as broker-dealers without registering with the SEC. Having established the primary violation, the only issue is whether Mr. Laurent is a "control person" of ETBO and BO Systems.

The undisputed facts also establish this element as well. "When determining 'control person' status, the issue is whether the defendant exercised power or control over the primary violator, and the plaintiff 'need not show that the defendant was a culpable participant in the

violation.'" *Todd*, 642 F.3d at 1223 (*quoting Howard*, 228 F.3d at 1065).  Under its regulations, the SEC defines "control" to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405.[5]  In assessing whether a defendant is a control person, courts look to whether the person participated in the "day-to-day affairs of the corporation" and had "power to control corporate actions." *Howard*, 228 F.3d at 1065.

The same undisputed facts that show that Mr. Laurent was a necessary and substantial participant in the unregistered offer and sale of binary options also establish that he is a "control person" of ETBO and BO Systems, the primary violators of Section 15(a).  He admitted in his deposition that from the formation of the "Banc de Binary" business in 2010 to sometime around 2012, he held the title of CEO (of ETBO) and, in his words, was "███████" and "███████████" SEC SUF ¶¶ 20, 21.  Even when he was allegedly not the CEO, he remained a director, directed and guided the business, and was always actively involved, especially in marketing the binary option trading platform to investors.  *See id*. ¶¶ 22-25.  And at all times, he and his father effectively owned and controlled the "Banc de Binary Group."  *See id*. ¶¶ 11, 20-25.  More specifically, he has always been a controlling shareholder of ETBO and the sole beneficiary owner of BO Systems.  *See id*. ¶¶ 14-15.

These undisputed facts are all more then sufficient to establish that he was a control person of ETBO and BO Systems for their primary violations of Section 15(a)—acting as unlawfully broker-dealers.  *See*, *e.g.*, *Small Business Capital*, 2013 WL 4455850, at *15 (on summary judgment, holding defendant liable for Section 15(a) violation as "control person" under Section 20(a)); *see also  Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190 (N.D. Cal. 2012) (sustaining Section 20(a) claims, including against primary violator's chairman, president and CEO, who exercised control over its operations); *In re China Intelligent Lighting and Electronics, Inc.*

---

[5] "[A]n agency's interpretation of the laws it administers is entitled to substantial deference." *Environmental Action, Inc. v. SEC*, 895 F.2d 1255, 1259 (9th Cir. 1990) (*citing Marathon Oil Co. v. United States*, 807 F.2d 759, 765 (9th Cir.1986), *cert. denied*, 480 U.S. 940, (1987), *citing Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-45 (1984)).

1  *Sec. Litig.,* No. CV 11-2768 PSG (SSx), 2012 WL 3834815, at *6 (C.D. Cal. Sept. 5, 2012)

2  (sustaining control person claim against small company's founder and CEO, who was a substantial

3  shareholder of the company and whom the company represented to regulators as the one who

4  controlled the company's management).

5    **C.    The Adverse Inferences Of Mr. Laurent's Fifth Amendment Assertions Further**

6          **Establish His Violations**

7        The fact that Mr. Laurent also asserted the Fifth Amendment privilege on questions directly

8  dealing with his involvement in the offer and sale of binary options and the defendants' brokerage

9  activity in the U.S. also further establishes his securities law violations.  In his deposition in this

10 case, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

11 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

12 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  *See* SEC SUF. ¶¶ 129-147.  ▓▓▓▓▓▓▓▓▓

13 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

14 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  *See id.*

15        The consequence of Mr. Laurent's assertions is twofold.  First, he should be precluded from

16 offering any testimony to rebut the SEC's proof of his liability.  *See Nationwide Life Ins. Co. v.*

17 *Richards*, 541 F.3d 903, 911-12 (9th Cir. 2008); *SEC v. Benson*, 657 F.Supp. 1122, 1129 (S.D.N.Y.

18 1987).  "[I]t would be an abuse of the Fifth Amendment to allow a civil litigant to use it to offer

19 proofs while denying the adversary discovery of his contentions."  *Benson*, 657 F.Supp. at 1129.

20 While he obviously has the right to assert the privilege, Mr. Laurent "cannot have it both ways.  By

21 hiding behind the protection of the Fifth Amendment as to his contentions, he gives up his right to

22 prove them."  *Id.*; *see also Nationwide Life Ins.*, 541 F.3d at 910-11 (affirming district court's

23 preclusion of testifying at trial in order "narrowly tailored to impose upon [party asserting privilege]

24 only that detriment necessary to prevent unfair prejudice to [opposing party]").

25        Here, such an order barring Mr. Laurent from offering any evidence is more than justified.

26 The only reason the SEC was able to take his deposition in the United States was because the SEC

27 secured a motion to compel from this Court forcing that deposition.  *See* Dkt. No. 61.  And then,

28 during the deposition, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1 | ████████████████████ (*see* SEC SUF ¶¶ 129-134) ████████████████

2 | ████████████████████████████████ *See id.* ¶¶ 135-141, 142-147. ████████

3 | ████████████████████████████████████████████████████ *Id.* ¶

128.  In fact, the SEC was forced to file another motion, asking this Court to compel him to produce

documents responsive to the SEC's document requests after Mr. Laurent inappropriately asserted a

blanket assertion to all but one document request.  *See* Dkt. No. 70.  Under these circumstances,

preclusion of his testimony is more than warranted.  *See Nationwide Life Ins.*, 541 F.3d at 911-12;

*Benson*, 657 F.Supp. at 1129-30 (barring testimony when defendant asserted Fifth Amendment

privilege and was "uncooperative and obstructive"); *SEC v. Global Express Capital Real Estate Inv.*

*Fund I, LLC*, No. 2:03-CV-01514-KJD-LRL, 2006 WL 7347289, *14 (D. Nev. March 28, 2006),

*rev'd in part*, *aff'd in part*, 289 Fed. Appx. 183 (9th Cir. 2008) (for SEC's motion for summary

judgment, barring defendants from offering evidence after asserting Fifth Amendment in

depositions); *but see FTC v. Sharp*, 782 F.Supp. 1445, 1452 (D. Nev. 1991) (not precluding

testimony where plaintiff not prejudiced).

Second, this Court may, and should, draw an adverse inference from Mr. Laurent's repeated

invocation of the Fifth Amendment during his deposition.  It is well-established that "in civil

proceedings, adverse inferences can be drawn from a party's invocation of [the] Fifth Amendment

right" not to testify.  *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000); *see*

*also SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) ("Parties are free to invoke the Fifth

Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure

of proof.").  Such an adverse inference is not automatic, and, in *SEC v. Luna*, Judge Pro recently

summarized what the SEC must establish for the inference to be drawn:

> The Court does not draw the inference unless (1) the SEC has a substantial
> need for the information, (2) no other, less burdensome means of obtaining the
> information exists, (3) "the value of presenting [the] evidence" is not
> "substantially outweighed by the danger of unfair prejudice to the party
> asserting the privilege," and (4) independent evidence of the fact about which
> the party refuses to testify exists.

No. 2:10-CV-2166-PMP-CWH, 2014 WL 794202, at *12 (D. Nev. Feb. 26, 2014) (Pro, J.) (*quoting*

*Nationwide*, 541 F.3d at 911-12); *see also Glanzer*, 232 F.3d at 1264.

1    All of these criteria are present here.  Clearly, the SEC has substantial need for Mr.

2   Laurent's testimony, and there is no other less burdensome means of obtaining evidence from Mr.

3   Laurent.  The other two defendants subject to this motion—ETBO and BO Systems—testified

4   through a corporate designee.  *See* SEC SUF ¶¶ 153-154.  Only Mr. Laurent can offer first-person

5   testimony about his personal role in the offer and sale of binary options, and in overseeing the

6   companies' brokerage activities—all of which would be admissible admission testimony.

7   Moreover, the SEC has presented substantial, irrefutable and independent evidence against Mr.

8   Laurent that establish his liability; and the value of Mr. Laurent's testimony on the subject of this

9   motion—which would have been admissible—far outweighs any chance of prejudice against Mr.

10  Laurent.  *See Luna*, 2014 WL 794202, at \*12 (finding adverse inference against defendant and

11  holding him liable on summary judgment when SEC presented "independent evidence" and

12  defendant's testimony "would have constituted admissible evidence"); *Global Express Capital Real*

13  *Estate*, 2006 WL 7347289, at \*15 (finding adverse inference against defendants for asserting Fifth

14  Amendment).

15   Therefore, even if the Court does not bar Mr. Laurent from offering evidence to refute his

16  liability, it would still be more than justified to find an adverse inference against him for his role in

17  the illegal, unregistered offer and sale of binary options, and his secondary liability for ETBO's and

18  BO Systems's unregistered broker-dealer activity.  Specifically, the SEC asks that this Court find an

19  adverse inference that Mr. Laurent was actively and deeply involved in the offer and sale of binary

20  options to U.S. investors, and that he controlled the day-to-day activities, including brokerage and

21  dealer activities, of ETBO and BO Systems—███████████████████████████████████

22  ███████████   *See*, *e.g.*, *Luna*, 2014 WL 794202, at \*12; *SEC v. Lauer*, No. 03-80612-CIV,

23  2008 WL 4372896, \*23 (S.D. Fla. Sept. 24, 2008) (finding adverse inference against defendant and

24  holding him liable as control person for Section 15(a) violations on SEC's summary judgment

25  motion).

26   **D.    The Court Should Order Defendants To Disgorge Their Ill-Gotten Gains And**

27   **Pay Significant Civil Penalties, To Be Determined After The Close Of Discovery**

28  After discovery is completed, the SEC will ask the Court to order ETBO, BO Systems and

Mr. Laurent to disgorge, jointly and severally, their ill-gotten gains and to pay significant civil penalties. Disgorgement is certainly appropriate here. The Court "has broad equity powers to order the disgorgement of ill-gotten gains obtained through violation of federal securities laws." *Platforms Wireless*, 617 F.3d at 1096. "Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable." *Id*. (*quoting SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998)). "The deterrent effect of an SEC enforcement action would be greatly undermined if securities laws violators were not required to disgorge illicit profits." *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996) (explaining that once SEC establishes violations and a reasonable approximation of defendants' illegal gains, the SEC "is entitled" to disgorgement of those gains) ; *see also SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993) (disgorgement is available and appropriate equitable remedy for violations of securities laws).

In contrast to civil damages in a private action, which are designed to compensate fraud victims, disgorgement in SEC enforcement actions forces a defendant to surrender his unjust enrichment and thus serves to reduce the incentive to violate the law. *See Rind*, 991 F.2d at 1491, 1493; *see also SEC v. JT Wallenbrock & Assoc.*, 440 F.3d 1109, 1113 (9th Cir. 2006); *First Pacific Bancorp*, 142 F.3d at 1191. Therefore, "[t]he amount of disgorgement should include all gains flowing from the illegal activities." *Platforms Wireless*, 617 F.3d at 1096 (*quoting JT Wallenbrock*, 440 F.3d at 1114).[6]

Moreover, joint and several liability for disgorgement is warranted when co-defendants collaborated or "act[ed] collectively" in violating the securities laws. *Platforms Wireless*, 617 F.3d at 1097-1098; *see also JT Wallenbrock*, 440 F.3d at 1116-17 ("'[W]here two or more individuals or

---

[6] For example, in *Platforms Wireless*, the Ninth Circuit affirmed the district court's order that the defendants disgorge the amount of proceeds obtained from illegal and unregistered offerings. *See id*. at 1097; *see also JT Wallenbrock*, 440 F.3d at 1113-17 (finding that "all $253.2 million obtained from investors was an ill-gotten gain that unjustly enriched the defendants" and affirming order that individual defendant disgorge, jointly and severally with entity defendants, entire $139.4 million in net proceeds from the scheme, consisting of monies raised less amounts paid to investors); *SEC v. Cross Fin. Services, Inc.,* 908 F.Supp. 718, 734 (C.D. Cal 1995) (defendant ordered to disgorge net receipts from investors in fraudulent offering of notes).

entities collaborate or have a close relationship in engaging in the violations of the securities laws, they [may be] held jointly and severally liable for the disgorgement of illegally obtained proceeds.'") (*quoting First Pac. Bancorp*, 142 F.3d at 1191); *SEC v. First Jersey Securities, Inc.,* 101 F.3d 1450, 1475 (2d Cir. 1996); *SEC v. Hughes Capital Corp.,* 124 F.3d 449, 455 (3d Cir. 1997); *SEC v. Berger,* 244 F. Supp. 2d 180, 194 (S.D.N.Y. 2001).[7]

Likewise, a defendant who is found to have violated the Securities Act and Exchange Act can also be ordered to pay penalties under Sections 20(d) and 21(d)(3) of those acts, respectively. *See* 15 U.S.C. §§ 77t(d), 78u(d)(3).  Civil penalties are meant to punish wrongdoers and to deter them and others from future securities law violations.  *See Kenton Capital*, 69 F. Supp. 2d at 17. The deterrence of securities law violations through the imposition of monetary sanctions serves several important goals, including encouraging investor confidence, increasing the efficiency of financial markets, and promoting the stability of the securities industry.  *See SEC v. Palmisano*, 135 F.3d 860, 866 (2d Cir. 1998).

The evidence will establish that a joint and several award of disgorgement and an order imposing penalties are more than appropriate here.  Indeed, defendants have admitted they lied to U.S. investors as part of their efforts to lure them to their binary options trading platform, and the evidence shows that they even violated recent court orders barring them from continuing to offer and sell binary options in the U.S.  *See* SEC SUF ¶¶ 83-95.

However, the SEC is not asking the Court to determine disgorgement or penalties at this stage.  This is a motion for summary judgment as to only three of the five defendants, and discovery is not yet completed.  In fact, the defendants have refused to produce their underlying financial records regarding the proceeds they received from the unregistered offer and sale of binary options in the U.S. and the proceeds they received as compensation for illegally acting as unregistered

---

[7] Disgorgement also normally includes prejudgment interest.  *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1105 (2d Cir. 1972); *Cross Fin. Services*, 908 F.Supp. at 734.  An award of prejudgment interest is designed to deprive the wrongdoer of the benefit of "what amounts to an interest free loan procured as a result of illegal activity."  *SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996).  As with disgorgement, the aim is to prevent unjust enrichment and, by making violations unprofitable, to deter the defendant and others from committing securities fraud.  *See First Pacific Bancorp*, 142 F.3d at 1191.

broker-dealers.  The SEC has a pending motion to compel before Magistrate Judge Ferenbach, in which the SEC has sought an order compelling the defendants to produce, among other things, documents regarding the proceeds they received from their illegal offer and sale of binary options. *See* Dkt. No. 70.  The SEC is currently in the process of attempting to determine the appropriate amount of disgorgement and civil penalties that it would seek against the defendants, but filed its motion to compel to ensure that it has a complete record on these critical issues of relief.  Therefore, the SEC does not ask the Court to determine disgorgement and penalties with this motion.

## IV.    CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court (1) grant the SEC's motion for summary judgment, and (2) hold defendants ETBO, BO Systems and Mr. Laurent liable for violations of Section 5 of the Securities Act, hold defendants ETBO and BO Systems primarily liable for violations of Section 15(a) of the Exchange Act, and hold Mr. Laurent liable as a control person for ETBO's and BO Systems's primary violations of Section 15(a).


Dated:  October 8, 2014                  Respectfully submitted,

                                          */s/ John W. Berry*
                                         John W. Berry
                                         Amy J. Longo
                                         Leslie A. Hakala
                                         Attorneys for Plaintiff
                                         Securities and Exchange Commission

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

    U.S. SECURITIES AND EXCHANGE COMMISSION,
    444 S. Flower Street, Suite 900 Los Angeles, California 90071
    Telephone No.  (323) 965-3998; Facsimile No.  (213) 443-1904

On October 8, 2014, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS OREN SHABAT LAURENT (F/K/A OREN SHABAT), ET BINARY OPTIONS LTD. AND BO SYSTEMS LTD. SEYCHELLES** on all the parties to this action addressed as stated on the attached service list:

☐    **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐    **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐    **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐    **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐    **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐    **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒    **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐    **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

    I declare under penalty of perjury that the foregoing is true and correct.

Date:  October 8, 2014                _/s/ Susan G. Cavallone_
                              Susan G. Cavallone

**SEC v. Banc de Binary Ltd, et al.**
**United States District Court – District of Nevada**
**Case No. 2:13-cv-00993-RCJ-VCF**

**SERVICE LIST**

A. Jeff Ifrah, Esq.
David B. Deitch, Esq.
Rachel Hirsch, Esq.
Ifrah PLLC
1717 Pennsylvania Avenue, NW, Suite 650
Washington, DC 20006-2004
jeff@ifrahlaw.com
ddeitch@ifrahlaw.com
rhirsch@ifrahlaw.com
Tel: (202) 524-4147


Craig S. Denney, Esq.
SNELL & WILMER L.L.P
50 West Liberty Street
Suite 510
Reno, Nevada 89501
cdenney@swlaw.com
jcochran@swlaw.com
Tel: (775) 785-5440

*Attorneys for Defendants*