**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| SECURITIES & EXCHANGE COMMISSION, | 2:13–cv–993–RCJ–VCF |
| Plaintiff, | |
| vs. | **ORDER** |
| BANC DE BINARY, *et al.*, | |
| Defendants. | |

This matter involves the Securities and Exchange Commission's civil enforcement action against Banc de Binary, *et al.* for allegedly trading unregistered securities in violation of Section 5 of the Securities Act, 15 U.S.C. §§ 77e and section 15(a)(1) of the Exchange Act of 1934, 15 U.S.C. § 78o(a)(1). (Second Amend. Compl. (#58) at ¶¶ 120–27[1]). Before the court is the Commission's Motion to Compel (#70). Banc de Binary filed an opposition (#71); and the Commission replied (#72). For the reasons stated below, the Commission's motion is granted in part and denied in part.

**BACKGROUND**

Defendant Banc de Binary, Ltd. is a Cypriot corporation with a principal place of business on Cyprus' southern shore, in Limassol. (Summons (#58-1) at 1). It is affiliated with three other corporations, Defendants ET Binary Options Ltd., BO Systems, Ltd., and BDB Services, Ltd. (Second. Amend. Compl. (#58) at ¶¶ 4). Although Banc de Binary, Ltd.'s affiliates are incorporated in Israel and the Republic of Seychelles, the companies collectively do business as "Banc de Binary." (*Id.* at ¶¶ 4, 13–15).

---

[1] Parenthetical citations refer to the court's docket.

1

Banc de Binary was founded in 2010 by Defendant Oren Shabat Laurent, a twenty-nine year old American and Israeli citizen who lives on the outskirts of Tel Aviv. (*Id*. at ¶ 16); (Pl.'s Serv. Mot. (#43-1) at 3:10–11). He owns fifty percent of Banc de Binary, and is also the sole owner or fifty percent shareholder of ET Binary Options Ltd., BO Systems, Ltd., and BDB Services, Ltd. (Second. Amend. Compl. (#58) at ¶¶ 5, 18, 19, 31).

Banc de Binary operates an online trading platform where investors buy securities[2] known as "binary options." (*See id*. at ¶¶ 33–43). Binary options are essentially fixed odds financial bets. When purchasing binary options, investors guess whether the value of a stock will increase or decrease. (Second. Amend. Compl. (#58) at ¶¶ 33–43). If the guess is correct, the investor receives a payout that is determined by the value of the underlying asset. (*Id*.) If the guess is incorrect, the investor gets nothing. (*Id*.) They are called binary options because these two returns are the only possible returns. (*See id*.)

Although Banc de Binary is licensed to operate in Cyprus under the supervision of the Cyprus Securities and Exchange Commission, it is not registered with the United States' Securities and Exchange Commission and, therefore, not licensed to operate here. (*Id*. at ¶¶ 56, 79). Nonetheless, Banc de Binary has allegedly traded binary options in the United States since 2010 in violation of section 5 of the Securities Act, 15 U.S.C. §§ 77e and section 15(a)(1) of the Exchange Act of 1934, 15 U.S.C. § 78o(a)(1). (*Id*. at ¶¶ 120–27).

The parties are currently in the midst of discovery. In late 2013, the Commission served its first and second sets of document requests, interrogatories, and requests for admissions on Banc de Binary, Ltd. ("BdB Ltd."). (Berry Decl. (#70-2) at ¶ 3). Between January and May of 2014, the Commission

---

[2] As discussed in the Honorable Robert C. Jones, U.S. District Judge's August 7, 2013 order, binary options are not technically options but they are securities subject to the Commission's jurisdiction. *Sec. Exch. Comm'n v. Banc de Binary, et al.*, — F. Supp. 2d —, 2013 WL 4042280, at *6 (D. Nev., Aug. 7, 2013).

2

filed an amended complaint, naming ET Binary Options Ltd. ("ETBO"), BO Systems, Ltd. ("BO Systems"), BDB Services, Ltd. ("BDB Services"), and Oren Shabat Laurent as Defendants, and propounded discovery on the newly named Defendants. (*See id.* at ¶ 4).

Now, the Commission moves to compel, arguing, *inter alia*, that (1) ETBO, BO Systems, and BDB Services failed to respond to any requests, (2) Mr. Laurent and BdB Ltd. provided incomplete responses to many requests, (3) all Defendants failed to make a reasonable inquiry to locate responsive documents, (4) all Defendants are intentionally withholding discoverable documents,[3] and (5) Mr. Laurent improperly invoked the Fifth Amendment in response to all but one of the Commission's requests.[4]

In response, Defendants argue that (1) they did, in fact, fully respond to some of the Commission's requests,[5] (2) their delayed or incomplete production was partly attributable to the recent war in Israel, (3) they completed their production on September 12, 2014, after the Commission moved to compel, (4) some of the Commission's discovery requests are unduly burdensome as a matter of law because Defendants stipulated to liability, and (5) the Commission did not fully meet and confer with regard to Mr. Laurent's assertion of the Fifth Amendment.

The Commission's reply asserts, *inter alia*, that (1) Defendants' September 12, 2014 production is incomplete, (2) no liability stipulations have been entered, but the parties are discussing settlement,

---

[3] In support of this argument, the Commission relies on documents produced in a parallel action, which were not produced in this action. *See U.S. Commodity Futures Trading Comm'n v. Banc de Binary, Ltd*. No. 2:13-cv-00993-RCJ-VCF (D. Nev. 2013).

[4] Both parties agree that criminal prosecution is a possibility for Mr. Laurent. As discussed in prior orders, Judge Jones' August 7, 2013 order recognized that Defendants may be criminally liable under the federal RICO statute. *Sec. Exch. Comm'n v. Banc de Binary, et al*., — F. Supp. 2d —, 2013 WL 4042280, at *6 (D. Nev., Aug. 7, 2013).

[5] For instance, one area of documents that is in dispute is Defendants' financial records. The Commission claims to have no records. In response, Defendants provided a list of financial records that were provided. In reply, the Commission asserts that the records are incomplete or not original (*i.e.*, that they were made for the sole purpose of responding to discovery requests).

3

and (3) even if liability stipulations were entered, the Commissions' requests are still relevant to damages.

Finally, the Commission also moves to extend the current discovery cutoff date, which was September 19, 2014. (*See* Sched. Order (#68) at 3). However, the Commission did not make any legal argument in support of this request; and Defendants failed to respond to the Commission's request to extend discovery. According, the court held a hearing on October 21, 2014 to resolve the parties' factual disputes and hear arguments. This order follows.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) governs discovery's scope and limits. In pertinent part, Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Rule 26 defines relevant information as any information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. The Supreme Court states that Rule 26 affords liberal discovery. *Seattle Times, Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Liberal discovery "serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993).

Where—as here—a party resists discovery, the requesting party may file a motion to compel. Rule 37 governs motions to compel, and provides that a "party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to answer an interrogatory submitted under Rule 33" or "fails to respond" to a request under Rule 34. Before moving to compel, Rule 37 requires the movant to include a certification that the movant has "in good faith conferred or attempted to confer" with the party resisting discovery before seeking judicial intervention. FED. R. CIV. P. 37(a)(1); *see also* LR 26-7(b); *ShuffleMaster, Inc. v. Progressive Games, Inc*., 170 F.R.D. 166, 171 (D. Nev. 1996) (discussing the District of Nevada's meet-and-confer requirements).

The party resisting discovery carries the heavy burden of showing why discovery should be denied. *Blankenship v. Hearst Corp*., 519 F.2d 418, 429 (9th Cir. 1975). The resisting party must show that the discovery request is overly broad, unduly burdensome, irrelevant or disproportional in light of "the issues at stake." FED. R. CIV. P. 26(b)(2)(C); *Teller v. Dogge*, No. 2:12–cv–591–JCM, 2013 WL 1501445 (D. Nev. Apr. 10, 2013) (Foley, M.J.) (citing *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 253–4 (S.D. Ind. 2000).

To meet this burden, the resisting party must specifically detail the reasons why each request is improper. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999). Boilerplate, generalized objections are inadequate and tantamount to making no objection at all. *Id*. (citing *Cipollone v. Liggett Group, Inc*., 785 F.2d 1108, 1121 (3d Cir. 1986) (objecting party must show a particularized harm is likely to occur if the requesting party obtains the information that is the subject of the particular objections; generalized objections are insufficient)).

Therefore, the party opposing discovery must allege (1) specific facts, which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence, or (2) sufficient detail regarding the time, money and procedures required to comply with the purportedly improper request. *Jackson v. Montgomery Ward & Co., Inc*., 173 F.R.D. 524 (D. Nev. 1997) (citations omitted); *Cory v. Aztec Steel Bldg*., Inc., 225 F .R.D. 667, 672 (D. Kan. 2005).

The court has broad discretion in controlling discovery, *see Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988), and in determining whether discovery is burdensome or oppressive. *Diamond State Ins. Co. v. Rebel Oil. Inc*., 157 F.R.D. 691, 696 (D. Nev.1994). The court may fashion any order which justice requires to protect a party or person from undue burden, oppression, or expense. *United States v. Columbia Board. Sys., Inc*., 666 F.2d 364, 369 (9th Cir.1982) *cert. denied*, 457 U.S. 1118 (1982).

5

**DISCUSSION**

As discussed during the court's October 21, 2014, hearing, the parties' discovery filings address nine groups of discovery requests. Each of the nine discovery disputes is addressed below.

The <u>first</u> discovery dispute concerns the Commission's first, third, and fifth document requests. These requests seek information related to Defendants' solicitation of US investors. (*See* Berry Decl. (#70-2) at Ex. 1). Defendants do not dispute that this request seeks relevant information. Rather, they argue that the request is overbroad and not discoverable under Rule 26(b)(2)'s proportionality principles.

As discussed during the hearing, the Commission's motion to compel is granted with regard to this set of requests. The information is discoverable because (1) it is relevant to the Commission's claims that Defendants offered and sold securities in the United States and (2) Defendants conceded that the corporate Defendants worked in concert.[6] Additionally, the request is not unduly burdensome. During the hearing, the parties stipulated to meet and confer to establish a list of search terms that would appropriately tailor Defendants' production to the Commission's request. The parties must agree upon a list of search terms[7] within two weeks of this order and Defendants must complete their production thirty days thereafter.

The <u>second</u> discovery dispute concerns the Commission's twenty-second document request. This request seeks board minutes from the corporate Defendants. Defendants do not dispute that this request seeks relevant information. Rather, they argue that the request is overbroad and not discoverable under Rule 26(b)(2)'s proportionality principles. Therefore, the court grants the Commission's motion to

---

[6] Defense counsel initially maintained that the corporate Defendants did not work in concert and that each discovery request should be viewed discretely with regard to each corporate defendant. However, defense counsel subsequently argued that the brand, Banc de Binary, was forced to incorporate in different forms in different jurisdictions in order to transact business with potentially anti-Semitic business partners and clients.

[7] As discussed during the court's hearing, the search terms "seroph" and "cathrock" will likely lead to an overly burdensome discovery request.

compel with regard to this request with one limitation: that Defendants produce all board minutes that mention or discusses relations with US investors. As discussed during the hearing, this limitation moots Defendants proportionality concern by limiting the scope of the Commission's request to "the issues at stake in the action." FED. R. CIV. P. 26(b)(2)(C)(iii). Defendants must produce responsive documents within thirty days from the date of this order.

The <u>third</u> discovery dispute concerns the Commission's thirteenth document request, which seeks information regarding complaints from US investors. Defendants argue that this request is improper because receiving a complaint from a US investor does not demonstrate the Defendants transacted business with US residents. This argument misunderstands the scope of discovery.

Under Rule 26(b), "relevant information need not be admissible at the trial." A discovery request only needs to "appear reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b). Defendants' argument regarding actual transactions is misplaced. The key inquiry is whether information regarding consumer complaints from US consumers "appears reasonably calculated to lead to the discovery of admissible evidence"—that is, evidence of contacts between Defendants and US consumers. The Commission's thirteenth document request satisfies Rule 26(b)'s reasonable-calculation standard. Defendants must produce documents responsive to this request within thirty days from the date of this order.

The <u>fourth</u> discovery dispute concerns the Commission's seventh interrogatory. It seeks the identity of BDB Services' "confidential ultimate beneficiary owner." (Ex. 1-A (#72-1) at 2:4). Defendants do not dispute that this individual's identity is discoverable. (*See* Mins. Proceedings #90). Rather, they merely argue that it should not become public record. (*Id*.) Therefore, the court grants the Commission's motion to compel with regard to this request. Defendants must disclose the identity of BDB Services' "confidential ultimate beneficiary owner" in accordance with the terms of the parties'

stipulated confidentiality and protective order.[8] Defendants must serve this interrogatory answer within thirty days from the date of this order.

The <u>fifth</u> discovery dispute concerns the Commission's tenth interrogatory, which seeks a list of all people employed by the defendant corporations. Defendants argue that compliance with this interrogatory would be burdensome under Rule 26(b)(2) because Laurent, ETBO, and BO Systems entered contingent stipulations of liability.[9] Therefore, Defendants conclude, Laurent, ETBO, and BO Systems are excused from complying with the Commission's discovery requests because no controversy exists.

The court disagrees. First, the stipulations of liability are not final. Laurent, ETBO, and BO Systems remain parties to this action and continue to litigate disputes in court. Second, Defendants and the Commission agree that the settling Defendants (i.e., Laurent, ETBO, and BO Systems) and remaining Defendants (i.e., BDB Ltd. and BDB Services) acted in concert in some capacity. As stated above, Defendants argued that the cultural conditions in the Middle East required Defendants to incorporate in different nations in order to avoid regional prejudices. The parties further stated that individual employees with Banc de Binary used fictitious names to avoid regional prejudices. These facts demonstrate that the Commission's tenth interrogatory "appears reasonably calculated to lead to the discovery of admissible evidence," *see* FED. R. CIV. P. 26(b), because the Commission must prove whether, and to what extent, Defendants solicited US consumers. Therefore, the court grants the Commission's motion to compel with regard to this request. Defendants must respond to this interrogatory within thirty days from the date of this order and provide complete employee lists,

---

[8] As discussed during the court's hearing, Defendants may disclose this individual's identity on an attorneys'-eyes-only basis.

[9] The stipulations of liability, or settlement agreements, are currently being held in escrow because they are contingent on a condition subsequent that had not been satisfied on the date of the court's hearing.

including real and fictitious names.

The <u>sixth</u> discovery dispute concerns the Commission's eighth, ninth, and twenty-eighth document requests. These requests seek information regarding money received by Defendants from US investors and/or money refunded by Defendants to US investors as well as Defendants' CRM database.[10] To date, Defendants have only produced information detailing their holdings in various stocks and stock indices. (*See* Mins. Proceedings #90). The Commission argues that Defendants would satisfy each of these requests by producing the CRM database. (*Id*.) In response, Defendants argue that they satisfied this request because they produced a single number for each Defendant that represents the total sum received by the Defendant from US investors. In reply, the Commission argues that the underlying data from the CRM database is discoverable to test the accuracy of Defendants' calculations. The court agrees. Defendants must produce underlying data from the CRM database that relates to US investors for the relevant period. Defendants must comply with these requests within thirty days from the date of this order.

The <u>seventh</u> discovery dispute concerns the Commission's twenty-sixth document request, which seeks Defendants' tax records. To date, Defendants only produced ETBO's tax records. In response, Defendants stated that the Commission fails to move to compel on its twenty-sixth document request and that the Commission failed to meet and confer with regard to this request. The court agrees. The Commission's motion does not address this request. (*See* Pl.'s Mot. to Compel (#70-1) at 2:21). Therefore, this dispute is not ripe for review. The parties are ordered to meet and confer in accordance with Rule 37 and Local Rule 26-7(b).

---

[10] The CRM database contains information on all of Defendants' customers; it is organized by a client identification number and that shows how much money Defendants have received and/or refunded from and/or to each customer.

9

The <u>eighth</u> discovery dispute concerns the Defendant Laurent's invocation of the Fifth Amendment. As discussed in prior orders, Judge Jones' August 7, 2013 order stated that Defendants may be criminally liable under the federal RICO statute. *Sec. Exch. Comm'n v. Banc de Binary, et al.*, 964 F. Supp. 2d 1229, 1237, n. 4 (D. Nev. 2013). Laurent has invoked his Fifth Amendment right against self-incrimination during his deposition and in response to all but one of the Commission's document requests.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. "[T]he privilege [against self-incrimination] . . . can be asserted in any proceeding . . . in which the witness reasonably believes that the information sought, or discoverable as a result of his testimony, could be used in a subsequent state or federal criminal proceeding." *United States v. Balsys*, 524 U.S. 666, 672 (1998). The privilege is robust: it extends not only to answers that would support a conviction but to any answer that would "furnish a link in the chain of evidence needed to prosecute." *Hoffman v. United States*, 341 U.S. 479, 486–87 (1951); *see also Pillsbury Co. v. Conboy*, 459 U.S. 248, 266 n. 1 (1983) (Marshall, J., concurring) ("A witness is generally entitled to invoke the Fifth Amendment privilege against self-incrimination whenever there is a realistic possibility that his answer to a question can be used in any way to convict him of a crime."). In the words of the Tenth Circuit, "[t]he court should order a witness invoking his Fifth Amendment rights to answer questions "'only if it is 'perfectly clear' that the witness is mistaken and the answers 'cannot possibly' tend to incriminate." *United States v. Castorena–Jaime*, 285 F.3d 916, 931 (10th Cir. 2002) (quoting *United States v. Nunez*, 668 F.2d 1116, 1121 (10th Cir. 1981)).

Here, the Commission moves to compel responses to fifteen of its sixteen document requests. (*See* Pl.'s Mot. to Compel (#70-1) at 11:7–14). However, the Commission's motion does not analyze individual requests or demonstrate why Laurent's invocation of his right was improper with regard to

each request. (*Id*. at 21–23). It merely asserts, *inter alia*, that Laurent asserted the Fifth Amendment in a blanket fashion and that the Commission is a "civil agency" and is not pressing criminal charges. (*Id.* at 22:25–26). In response, Defendants contend that the Commission failed to adequately meet and confer on this dispute. (Def.s' Opp'n (#71) at 24).

The court defers ruling on this dispute for two reasons. First, the Commission failed to demonstrate that Laurent's production will not "furnish a link in the chain of evidence needed to prosecute." *See, e.g.*, *Slagowski v. Cent. Wash. Asphalt*, No. 2:11–cv–142–APG, 2013 WL 7231219, at *3 (D. Nev. Dec. 9, 2013) *aff'd in part, rev'd in part by Slagowski v. Cent. Wash. Asphalt*, *Inc.*, No. 2:11–cv–142–APG, 2014 WL 643038 (D. Nev. Feb. 18, 2014).

Second, the court defers ruling on this dispute because it is not "perfectly clear," *Castorena–Jaime*, 285 F.3d at 931, that Laurent's production cannot incriminate him since the parties allegedly failed to fully meet and confer. The Commission correctly argues that "the meet and confer process does not require the parties to discuss their disputes forever." (Pl.'s Reply (#72) at 7:9–10). However, the meet and confer process does require the parties to discuss their dispute with enough factual and legal detail so that the court may review something more than a general disagreement.

Rule 37 provides, *inter alia*, that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1). Local Rule 26-7(b) supplements Rule 37(a)(1) and states "[d]iscovery motions will not be considered unless a statement of the movant is attached thereto certifying, after personal consultation and **sincere effort** to do so, the parties have been unable to resolve the matter without Court action." (emphasis added). The meet-and-confer requirement is designed to avoid the exact situation that exists here: requiring the court to decide a general disagreement that could have been refined with better communication.

The <u>ninth</u> set of discovery requests concerns the Commission's request to have Defendants certify the completeness of their responses. Defendants failed to oppose the Commission's motion regarding certification. (*See generally* Def.'s Opp'n #71).

Under Rules 26 and 37, the failure to oppose a discovery request, or file specific objections to the request, is tantamount to consenting to the granting of the motion to compel. *See, e.g.*, *Blankenship*, 519 F.2d at 429 (stating that the party resisting discovery carries the heavy burden of showing why discovery should be denied); *Teller*, 2013 WL 1501445 (citation omitted) (stating that the resisting party must show that the discovery request is overly broad, unduly burdensome, or irrelevant); *Walker*, 186 F.R.D. at 587 (stating that the resisting party must specifically detail the reasons why each request is improper). Therefore, the court grants the Commission's motion to compel with regard to this request. Defendants must certify the completeness of their responses within thirty days from the date of this order.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that the Commission's Motion to Compel (#70-1) is GRANTED in part and DENIED in part as described above.

IT IS FURTHER ORDERED that the Commission's oral Motion to Extend Discovery is GRANTED.

IT IS FURTHER ORDERED that the parties must file a STIPULATION with proposed discovery deadlines by November 12, 2014.

IT IS SO ORDERED.

DATED this 30th day of October, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE